**<u>EXHIBIT B</u>**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONSTAR INTERNATIONAL HOLDINGS | ) | Case No. 13-13281 (CSS) |
| LLC, et al., | ) | |
| | ) | Jointly Administered |
| Debtors.[1] | ) | |
| | ) | |

**BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND
ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL OF CERTAIN OF THE DEBTORS' ASSETS**

These bidding procedures (the "**Bidding Procedures**") have been approved by an order of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered on [●], 2014 [Docket No. [●]] (the "**Bidding Procedures Order**") on the docket of the case of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**").

The Bidding Procedures set forth the process by which the Debtors are authorized to conduct the sale (the "**Sale**") by auction (the "**Auction**") of substantially all of the assets of Constar International U.K. Limited (collectively, the "**Purchased U.K. Assets**").

---

Copies of the Bidding Procedures Order or other documents related thereto are available for a fee via PACER at: https://ecf.deb.uscourts.gov/.

---

**A.  Summary of Key Dates.**

The key deadlines and dates for the sale process are as follows:

| | |
|---|---|
| January 22, 2014 at [●] EST | Bid Deadline |
| January 24, 2014 at [●] EST | Auction (if necessary) |
| January 25, 2014 at [●] EST | Objection Deadline in Connection with the Sale |
| [January 27], 2014 at [●] EST | Sale Hearing |

---

[1]  The Debtors in these cases along with the last four digits of their federal tax identification number are: Constar International Holdings LLC (1880); Constar Group Holdings, Inc. (3047); Constar Intermediate Holdings, Inc. (4242); Constar Group, Inc. (4281); Constar International LLC (9304); BFF Inc. (1229); DT, Inc. (7693); Constar, Inc. (0950); Constar Foreign Holdings, Inc. (8591); and Constar International U.K. Limited (Foreign). The Debtors' corporate headquarters is located at, and the mailing address for each Debtor is, 1100 Northbrook Drive, 2nd Floor, Trevose, PA 19053.

**B.**     **Assets to be Auctioned.**

The Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer to purchase the Purchased U.K. Assets.  The terms of the applicable asset purchase agreement between the Debtors and the Successful Bidder (as defined herein) will define which of the assets are to be sold.

**C.**     **Public Announcement of Auction.**

Within three (3) business days of the entry of the Bidding Procedures Order, the Debtors shall serve all parties-in-interest and those parties who request notice a notice of the Auction and all deadlines related thereto (the "**Sale Notice**").

Not later than five (5) days after entry of the Bidding Procedures Order, the Debtors shall cause the Sale Notice to be published in the Financial Times, pursuant to Bankruptcy Rule 2002(1).

The Sale Notice shall provide notice to all interested parties that to participate in the bidding process and the Auction and to be deemed a Qualified Bidder (as defined below), each Potential Bidder (as defined below) must meet the requirements of the Bidding Procedures.

**D.**     **Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in purchasing the Purchased U.K. Assets (a "**Potential Bidder**") must deliver (unless previously delivered) to each of (1) counsel to the Debtors, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, Attn.: Michael J. Sage (michael.sage@dechert.com) and Brian E. Greer (brian.greer@dechert.com); and (2) proposed financial advisors to the Debtors, Lincoln Partners Advisors LLC, 633 West Fifth Street, Suite 6650, Los Angeles, California 90071, Attn.: Alexander W. Stevenson (astevenson@lincolninternational.com), the following preliminary documentation:

1.     an executed confidentiality agreement (a "**Confidentiality Agreement**") reasonably acceptable to the Debtors; and

2.     preliminary proof by the Potential Bidder of its financial capacity to close the proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased U.K. Assets, the party that will bear liability for a breach), the adequacy of which the Debtors and their advisors will determine.

The Debtors shall determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable preliminary documentation so that the Potential Bidder may conduct a due diligence review with respect to the Purchased U.K. Assets.  Only those Potential

01:14620830.1

Bidders that have submitted acceptable preliminary documentation (each, an "**Acceptable Bidder**") may submit bids to purchase the Purchased U.K. Assets.

**E.    Obtaining Due Diligence Access.**

After receipt of an executed Confidentiality Agreement and notification of Acceptable Bidder status, the Debtors shall provide each Acceptable Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request.  The due diligence period will end on the Bid Deadline (as defined herein).

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors, the Purchased U.K. Assets, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; **provided**, that the Debtors may decline to provide such information to any Acceptable Bidder who, in the Debtors' reasonable business judgment, has not established that such Acceptable Bidder intends in good faith to or has the capacity to consummate the Sale.  No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

> The Debtors have designated the proposed financial advisors to the Debtors, Lincoln Partners Advisors LLC, 633 West Fifth Street, Suite 6650, Los Angeles, California 90071, Attn.: Alexander W. Stevenson (astevenson@lincolninternational.com), to coordinate all reasonable requests for additional information and due diligence access.

**F.    Bid Requirements.**

(a)    To participate in the Auction, on or prior to the Bid Deadline (as defined in Section G.), an Acceptable Bidder must deliver to the Debtors and their advisors an irrevocable offer that must:

1.    be in writing;

2.    at a minimum, provide value equal to (a) the cash amount of the Stalking Horse Bid plus the Overbid, or (b) if there is no Stalking Horse Bid, then such amount set by the Sellers no later than the Stalking Horse Selection Deadline (as defined below) (the "**Minimum Bid**");

3.    constitute a good faith, bona fide offer to purchase the Purchased U.K. Assets;

4.    be accompanied by a proposed asset purchase agreement, which (a) may not be inconsistent with the Bidding Procedures, and (b) must be redlined against the form of Asset Purchase Agreement provided by the Debtors, or, if a Stalking Horse Bid has been identified by the Debtors pursuant to Section H., must be

redlined against the asset purchase agreement submitted by the Stalking Horse Bidder;

5.    identify with particularity each and every condition to closing, including identifying any and all Contracts and Leases that the Bidder wishes to have assumed and assigned to it at closing;

6.    not be conditioned on any contingency, including, but not limited to, obtaining any of the following: (a) financing; (b) shareholder, board of directors, or other approval; or (c) the outcome or completion of a due diligence review by the Potential Bidder;

7.    include a written acknowledgement and representation that the Acceptable Bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Purchased U.K. Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased U.K. Assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Purchased U.K. Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Acceptable Bidder's proposed asset purchase agreement as provided for in Section F.4 above;

8.    remain irrevocable until the Bankruptcy Court enters a Sale Order (as defined below) approving the Successful Bid (as defined below); and

9.    in the event such offer is chosen as the Back-Up Bid (as defined below), remain irrevocable until the Debtors and the Successful Bidder (as defined below) consummate the Sale.

(b)    In addition to the above, each Acceptable Bidder shall:

1.    provide the Debtors, on or before the Bid Deadline, with sufficient and adequate information to demonstrate, to the satisfaction of the Debtors, that such Potential Bidder has the financial wherewithal and ability to consummate a Sale;

2.    fully disclose the identity of each entity that will be bidding for or purchasing the Purchased U.K. Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties;

3.    on or before the Bid Deadline, submit a cash deposit of 10% of the amount of the Minimum Bid by wire transfer of immediately available funds to an account or accounts designated by the Debtors (a "**Good Faith Deposit**"); and

01:14620830.1

4

    4.      not be entitled to any break-up fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement.

Bids fulfilling all of the preceding requirements may, at the Debtors' sole discretion, be deemed to be "**Qualified Bids**," and those parties submitting Qualified Bids may, at the Debtors' sole discretion, be deemed to be "**Qualified Bidders**." Within 12 hours after the Bid Deadline, the Debtors shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and will notify the Acceptable Bidders whether bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any bid that is not deemed a Qualified Bid shall not be considered by the Debtors.

**G.      Bid Deadline.**

Binding bids must be received by (1) counsel to the Debtors, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, Attn.: Michael J. Sage (michael.sage@dechert.com) and Brian E. Greer (brian.greer@dechert.com); and (2) proposed financial advisors to the Debtors, Lincoln Partners Advisors LLC, 633 West Fifth Street, Suite 6650, Los Angeles, California 90071, Attn.: Alexander W. Stevenson (astevenson@lincolninternational.com), in each case so as to be actually received no later than January 22, 2014 at [●] (prevailing Eastern Time) (the "**Bid Deadline**").

**H.      Selection of the Stalking Horse Bid.**

At any time on or before January 16, 2014 (the "**Stalking Horse Bid Deadline**"), an Acceptable Bidder that wishes to be considered as a stalking horse bidder at the Auction may submit a proposed bid meeting the requirements of Section F. (a) 1, 4, and 6, and Section F. (b) 1 and 2 (a "**Proposed Stalking Horse Bid**"). The Debtors shall evaluate any Proposed Stalking Horse Bids submitted prior to the Stalking Horse Bid Deadline and, at any time prior to January 21, 2014 (the "**Stalking Horse Selection Deadline**"), the Debtors may identify a Proposed Stalking Horse Bid to serve as the stalking horse bid at the Auction (the "**Stalking Horse Bid**"), and the party submitting the Stalking Horse Bid shall serve as the "**Stalking Horse Bidder**." The Stalking Horse Bid may include an expense reimbursement and break-up fee of up to two and one-half percent (2.5%) of the cash consideration provided by the Stalking Horse Bid (the "**Bid Protections**"). In the event the Debtors select a Stalking Horse Bid, the Debtors will file a notice with the Bankruptcy Court including the Stalking Horse Bid and distribute copies of the Stalking Horse Bid to each Acceptable Bidder. In the event that the Debtors do not select a Stalking Horse Bidder, the Debtors shall notify the Acceptable Bidders of the Minimum Bid on or prior to the Stalking Horse Selection Deadline.

**I.      Selection of the Starting Bid.**

In advance of the Auction, the Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, the highest or otherwise best bid for the Purchased U.K. Assets (a "**Starting Bid**"), which in no event shall be less than the Minimum Bid or the Stalking Horse Bid. Prior to the date of the Auction, the Debtors shall distribute copies of the Starting Bid to each Qualified Bidder that has submitted a Qualified Bid.

01:14620830.1

**J.      No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur. The Debtors reserve all rights to extend the Stalking Horse Bid Deadline or the Bid Deadline to such later date that the Debtors believe is necessary, in their business judgment, to obtain a Qualified Bid for the Purchased U.K. Assets.

**K.      Auction.**

If one or more Qualified Bids are received by the Bid Deadline, then the Debtors shall conduct the Auction.  The Auction shall commence on January 24, 2014 at [●] (prevailing Eastern Time) at the offices of Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, or such later time or other place as the Debtors shall timely notify each Qualified Bidder.

The Auction will be conducted in accordance with the following procedures (the "**Auction Procedures**"):

1.      the Auction will be conducted openly;

2.      only Qualified Bidders shall be entitled to bid at the Auction;

3.      the Qualified Bidders shall appear at the Auction in person or through duly-authorized representatives;

4.      only such authorized representatives of the Debtors, each of the Qualified Bidders, and each of their respective advisors shall be permitted to attend the Auction;

5.      bidding shall begin at the Starting Bid;

6.      bidding shall begin at the Starting Bid and subsequent bids shall (a) be made in minimum increments of $250,000 (the "**Overbid**") and (b) comply with the bid requirements set forth in Section F., provided that, if a Stalking Horse Bid has been identified, the first bid subsequent to the Starting Bid must be a minimum of the (i) Stalking Horse Bid, plus (ii) the Bid Protections, plus (iii) the Overbid (the "**Stalking Horse Initial Overbid**"), and all subsequent bids to the Stalking Horse Initial Overbid shall be in minimum increments of the Overbid;

7.      each Qualified Bidder will be informed of the terms of the previous bids;

8.      the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

9.      each Qualified Bidder will be required to confirm on the record that it has not engaged in any collusion with respect to the bidding or the Sale;

01:14620830.1

10.    absent irregularities in the conduct of the Auction, or reasonable and material confusion during the bidding, the Bankruptcy Court will not consider bids made after the Auction has been closed;

11.    the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors, after consultation with their advisors, from time to time on the record at the Auction, provided, that any such other Auction procedures shall not be inconsistent with any order of the Bankruptcy Court; and

12.    notwithstanding anything herein to the contrary, the Debtors may at any time, and in their sole discretion, choose to cancel the Auction, adjourn the Auction, or modify the Auction Procedures if necessary to comply with their fiduciary duties.

**L.    Acceptance of the Successful Bid.**

Upon the conclusion of the Auction (if conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, and after consulting with their advisors, shall identify the highest or otherwise best bid for the Purchased U.K. Assets (a "**Successful Bid**"). Any Qualified Bidder having submitted a Successful Bid will be deemed a "**Successful Bidder**." The Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that: (1) the Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (2) the Auction was fair in substance and procedure; (3) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (4) consummation of the Sale as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best value for the Purchased U.K. Assets, and is in the best interests of the Debtors' estates.

If the Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (1) such bid is declared the Successful Bid at the Auction and (2) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of an order (the "**Sale Order**") approving such Successful Bid.

**M.    Designation of Back-Up Bidder.**

If for any reason a Successful Bidder fails to consummate the purchase of the Purchased U.K. Assets within the time permitted after the entry of the Sale Order approving the Sale to such Successful Bidder, then the Qualified Bidder with the second highest or otherwise best bid (the "**Back-Up Bid**") to purchase the Purchased U.K. Assets (the "**Back-Up Bidder**"), as determined by the Debtors after consultation with their advisors at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the Successful Bid, and the Back-Up Bidder shall be deemed a

Successful Bidder and shall be required, at the sole discretion of the Debtors, to consummate the Sale with the Debtors as soon as is commercially practicable without further order of the Bankruptcy Court upon at least 24 hours advance notice, which notice will be filed with the Bankruptcy Court.

**N.     Sale Hearing.**

A hearing to consider approval of the Successful Bid, whereby the Debtors will seek entry of a Sale Order seeking approval of the Sale to the Successful Bidder (the "**Sale Hearing**"), is presently scheduled to take place on [January 27], 2014 at [●] (prevailing Eastern Time), or as soon thereafter as counsel may be heard, before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, in the Bankruptcy Court, 824 North Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors by filing a notice on the electronic docket of the Bankruptcy Court or sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

**O.     Return of Good Faith Deposit.**

The Good Faith Deposit of a Successful Bidder shall, upon consummation of the Sale, be credited to the purchase price paid for the Purchased U.K. Assets.  If a Successful Bidder fails to consummate the Sale, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned (1) within 30 business days after consummation of the Sale or (2) upon the permanent withdrawal of the proposed Sale.

**P.     Reservation of Rights.**

The Debtors reserve their rights, following consultation with their advisors, to modify the Bidding Procedures in any manner that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customary terms and conditions on the Sale, including, without limitation, modifying the requirements for a Qualified Bid, extending the deadlines set forth in the Bidding Procedures, adjourning the Auction at the Auction, and/or adjourning the Sale Hearing in open court without further notice, canceling the Auction, and rejecting any or all Qualified Bids if, in the Debtors' business judgment, following consultation with their advisors, the Debtors determine that such Qualified Bid is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code or any related rules or the terms set forth herein, or (3) contrary to the best interests of the Debtors.

01:14620830.1

**Q.     Consent to Jurisdiction as Condition to Bidding.**

Any Stalking Horse Bidder and all other Qualified Bidders at the Auction shall be deemed to have (a) consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these chapter 11 cases, the Bidding Procedures, the applicable asset purchase agreement, the Auction, or the construction and enforcement of any Qualified Bid or related documents and (b) waived any right to a jury trial in connection with any disputes relating to the Debtors, the chapter 11 cases, the Bidding Procedures, the applicable asset purchase agreement, the Auction, or the construction and enforcement of any Qualified Bid or related documents.

**R.     Fiduciary Out.**

Upon the determination by the Debtors' directors, trustees, or members, as applicable, and upon advice of counsel, no term or provision these Bidding Procedures shall prevent, amend, alter, or reduce the Debtors' ability to exercise their fiduciary duties under applicable law.

Dated:   January [●], 2014
       Wilmington, Delaware

                                                  _____
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady (No. 2847)
Sean T. Greecher (No. 4484)
Maris J. Kandestin (No. 5294)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

Michael J. Sage
Brian E. Greer
Stephen M. Wolpert
Janet Bollinger Doherty
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Proposed Attorneys for the Debtors and Debtors in Possession*

01:14620830.1