IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CONSTAR INTERNATIONAL HOLDINGS LLC, et al., | Case No. 13-13281 (CSS) |
| | Jointly Administered |
| Debtors.[1] | |
| | Re: Docket Nos. 12, 131 & 135 |

**ORDER (I) APPROVING STALKING HORSE ASSET PURCHASE AGREEMENT; (II) ESTABLISHING BIDDING PROCEDURES RELATING TO SALE OF CERTAIN OF THE DEBTORS' ASSETS; (III) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (IV) APPROVING THE FORM AND MANNER OF NOTICE OF SALE; (V) ESTABLISHING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND NOTICING AND DETERMINING CURE AMOUNTS; (VI) SCHEDULING A HEARING TO CONSIDER THE SALE AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND <u>(VII) GRANTING RELATED RELIEF</u>**

This matter came to be heard by this Court on the Motion[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), requesting (i) entry of an order (a) approving that certain stalking horse asset purchase agreement, as amended (the "**Agreement**") by and between the Debtors and Amcor Rigid Plastics USA, Inc. (the "**Stalking Horse Bidder**"), (b) establishing the bidding procedures attached hereto as **Exhibit 1** (the "**Bidding Procedures**") with respect to the proposed sale of certain of the Debtors' assets (the "**Acquired Assets**"), as more fully set forth in the Agreement; (c) approving the Break-Up Fee

---

[1] The Debtors in these cases along with the last four digits of their federal tax identification number are: Constar International Holdings LLC (1880); Constar Group Holdings, Inc. (3047); Constar Intermediate Holdings, Inc. (4242); Constar Group, Inc. (4281); Constar International LLC (9304); BFF Inc. (1229); DT, Inc. (7693); Constar, Inc. (0950); Constar Foreign Holdings, Inc. (8591); and Constar International U.K. Limited (Foreign). The Debtors' corporate headquarters is located at, and the mailing address for each Debtor is, 1100 Northbrook Drive, 2nd Floor, Trevose, PA 19053.

[2] Unless otherwise stated, all capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the Agreement attached thereto as **Exhibit 4**, and to the extent of any inconsistency, the Agreement shall govern.

01:14607738.3

18748312

and Expense Reimbursement, as set forth in the Agreement; (d) approving the form and manner of notice of the sale (the "**Sale Notice**"), (e) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including the determination of cure amounts (the "**Assumption Notice**"); (f) establishing the date, time and place for a hearing on the sale and assumption and assignment of executory contracts and unexpired leases (the "**Sale Hearing**"); and (g) granting related relief; and (ii) entry of an order (a) approving the sale free and clear of all liens, claims, encumbrances and interests (the "**Transaction**" or the "**Sale**"), (b) authorizing the assumption, sale and assignment of certain executory contracts and unexpired leases and (c) granting related relief; and it appearing that notice of the Motion is appropriate under the circumstances and that no other or further notice need be given; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**THE COURT HEREBY FINDS AND CONCLUDES THAT:[3]**

A. This court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district and in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 365, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "**Local Rules**").

---

[3] The findings and conclusions set forth herein constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

01:14607738.3

2

C. Due and adequate notice of the relief requested and granted in this Order has been provided in light of the circumstances and the nature of the relief requested herein, and no other notice need be provided.

D. The Debtors have articulated good and sufficient business judgment and reasons for this Court to grant the relief requested in the Motion regarding the Sale process, including, without limitation: (i) approving the Debtors' entry into the Agreement; (ii) approving the Bidding Procedures; (iii) scheduling a Sale Hearing; (iv) approving the Sale Notice; and (v) approving the Assumption Notice.

E. The Bidding Procedures were negotiated in good faith by the Debtors and the Stalking Horse Bidder and are fair, reasonable and appropriate under the circumstances, and are designed to maximize recovery with respect to the sale of the Acquired Assets.

F. The Break-Up Fee and Expense Reimbursement (as defined in the Agreement) are the product of extensive negotiations between the Debtors and the Stalking Horse Bidder. Accordingly, payment of the Break-Up Fee and Expense Reimbursement under the circumstances described in the Agreement is: (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) reasonable and appropriate, in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (iv) necessary to induce the Stalking Horse Bidder to continue to pursue the Sale and to continue to be bound by the Agreement.

G. The Break-Up Fee and Expense Reimbursement also induced the Stalking Horse Bidder to submit a bid that will serve as a minimum floor bid on which the Debtors, their creditors and other bidders may rely. The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that Debtors will receive the best possible price for the Acquired Assets. The Break-Up Fee and Expense Reimbursement will not have an adverse impact upon the Debtors, their estates, or their creditors. Accordingly, the Bidding Procedures, including the Break-Up Fee and Expense Reimbursement, are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

H. The Assumption and Assignment Procedures are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures have been tailored to provide an adequate opportunity for any counterparties to the contracts and leases or other parties with interests in the contracts and leases to assert any objections.

I. The Sale Notice attached hereto as **Exhibit 2** is reasonably calculated to provide all potentially interested parties with timely and proper notice of this Order, the Bidding Procedures, the Transaction, the Auction, and the Sale Hearing, and to afford all parties with the opportunity to exercise any rights affected by the Motion, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

J. The Assumption Notice attached hereto as **Exhibit 3** is reasonably calculated to provide all counterparties to the Potential Assumed Contracts (the "**Contract Parties**") with proper notice of the potential assumption and assignment of their executory contract or unexpired lease and any cure amounts relating thereto, and to afford all parties with

01:14607738.3

4

the opportunity to exercise any rights affected by the Motion, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

K.    The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Those portions of the Motion seeking approval of (a) the Debtors' entry into the Agreement and all of its terms (including without limitation, the Break-Up Fee and the Expense Reimbursement), (b) the procedures for assumption and assignment of executory contracts and unexpired leases, including the determination of cure costs, (c) the Bidding Procedures, (d) the notice of the Sale; (e) the date, time and place of the hearing to approve the Sale; (f) and the notice and objection procedures related to each of the foregoing, are hereby approved.

2.    All objections to the relief requested in the Motion with respect to the Bidding Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled and denied on the merits.

3.    Notwithstanding anything contained in the Debtors' cash collateral order or financing order, the authorization and payment of the Break-Up Fee and Expense Reimbursement, subject to the rights of the Revolving Loan Agent set forth in Section 17 hereof, shall not constitute an event of default under or otherwise by prohibited by such orders.

4.    The Debtors are hereby authorized to enter into and execute the Agreement and to perform their obligations under the Agreement, and their prior actions in respect of the same are ratified and confirmed.

5. The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved and fully incorporated into this Order, and shall apply with respect to the proposed sale of the Acquired Assets.

6. The Sale Notice attached hereto as **Exhibit 2** provides proper notice to all parties in interest and is approved.

7. The Assumption Notice attached hereto as **Exhibit 3** provides proper notice to all parties in interest and is approved.

8. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

9. All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Acquired Assets.

10. The following "**Assumption and Assignment Procedures**" are hereby approved:

   i. Within three (3) business days after the entry of this Order (the "**Assumption Notice Deadline**"), the Debtors shall serve on each counterparty (each, a "**Counterparty**," and collectively, the "**Counterparties**") to any and all of their executory contracts and unexpired leases (the "**Potential Assumed Contracts**") the Assumption Notice, substantially in the form attached as **Exhibit 3**. On the Assumption Notice Deadline, the Debtors shall also file with the Court a notice that sets forth the Cure Amount, if any, that the Debtors believe is required to be paid to each applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Potential Assumed Contracts for them to be assumed and/or assigned in accordance with the Bankruptcy Code.

   ii. The Assumption Notice shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Potential Assumed Contracts for them to be assumed and/or assigned in accordance with the Bankruptcy Code. If a Counterparty objects to the Cure Amount for its Potential Assumed Contract, the Counterparty must file with this Court and serve on the Contract Objection Notice Parties (as defined below) a written objection (a "**Contract Objection**").

iii.     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, together with proof of service, on or before 4:00 p.m. (ET) on February 5, 2014 (the "**Contract Objection Deadline**"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Contract Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Potential Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

iv.     The "**Contract Objection Notice Parties**" are as follows: (1) the Debtors, 1100 Northbrook Drive, 2nd Floor, Trevose, PA 19053, Attn: J. Mark Borseth; (2) counsel to the Debtors, Dechert LLP, 1095 Avenue of the Americas, New York, NY 10036, Attn: Michael Sage (michael.sage@dechert.com), Brian Greer (brian.greer@dechert.com), and Stephen Wolpert (stephen.wolpert@dechert.com) and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Robert Brady (rbrady@ycst.com) and Sean Greecher (sgreecher@ycst.com); (3) financial advisors to the Debtors, Lincoln International LLC, 360 Madison Avenue, 21st Floor New York, NY 10017, Attn: Alexander Stevenson (astevenson@lincolninternational.com) and Jason Solganick (jsolganick @lincolninternational.com); (4) counsel to the Official Committee of Unsecured Creditors (the "**Committee**"), Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attn: H. Jeffrey Schwartz (jschwartz@brownrudnick.com) and Bennett S. Silverberg (bsilverberg@brownrudnick.com); and (5) counsel to the Stalking Horse Bidder, Foley & Lardner LLP, 500 Woodward Avenue, Detroit, Michigan 48243, Attn: Daljit S. Doogal and John A. Simon (ddoogal@foley.com and jsimon@foley.com).

v.     If after the Assumption Notice Deadline additional executory contracts or unexpired leases of the Sellers are determined to be Assumed Contracts, as soon as practicable thereafter, the Debtors shall file with this Court and serve, by overnight delivery, on the Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than (a) the Contract Objection Deadline, in the event that such Assumption Notice was filed and served within five (5) days of the Assumption Notice Deadline and (b) two (2) hours prior to the commencement of the Sale Hearing in the event that such Assumption Notice was filed and served more than five (5) days after the Assumption Notice Deadline.

vi.     If the Stalking Horse Bidder is not the Prevailing Bidder, as soon as practicable thereafter and in no event less than one (1) business day before the date of the Sale Hearing, the Debtors shall file with this Court and serve, by overnight delivery, on the Counterparties a notice identifying such Prevailing Bidder, and the Counterparties shall file any Contract Objections solely on the basis of adequate assurance of future performance not later than two (2) hours prior to the commencement of the Sale Hearing.

vii.     At the Sale Hearing, the Debtors will seek this Court's approval of their assumption and assignment to the Stalking Horse Bidder (or if the Stalking Horse Bidder is not the Prevailing Bidder, then to the Prevailing Bidder) of those executory contracts and unexpired

leases that have been selected by the Stalking Horse Bidder (or if the Stalking Horse Bidder is not the Prevailing Bidder, then by the Prevailing Bidder) to be assumed and assigned (collectively, the "**Assumed Contracts**"). Any and all rights of the Debtors and their estates with respect to any Potential Assumed Contracts that are not ultimately designated as Assumed Contracts shall be reserved.

        viii.    If no Contract Objection is timely filed and served with respect to a Potential Assumed Contract: (i) the Counterparty to such Potential Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Stalking Horse Bidder (or if the Stalking Horse Bidder is not the Prevailing Bidder, then to the Prevailing Bidder) of the Potential Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Stalking Horse Bidder (or if the Stalking Horse Bidder is not the Prevailing Bidder, then by the Prevailing Bidder); (ii) any and all defaults under the Potential Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (ii) the Cure Amount for such Potential Assumed Contract set forth in the notice shall be controlling, notwithstanding anything to the contrary in such Potential Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred and estopped from asserting any other claims or defaults related to such Potential Assumed Contract against the Debtors and their estates or the Stalking Horse Bidder (or if the Stalking Horse Bidder is not the Prevailing Bidder, then against the Prevailing Bidder), or the property of any of them, that existed prior to the entry of the Sale Order, or that conditions to assignment must be satisfied under such Potential Assumed Contracts or that there is any objection or defense to the assumption and assignment of such Potential Assumed Contract.

        ix.    To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by this Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Potential Assumed Contract may be assumed by the Debtors and assigned to the Stalking Horse Bidder (or if the Stalking Horse Bidder is not the Prevailing Bidder, then to the Prevailing Bidder) provided that the cure amount the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors pending this Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

        x.    Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order additional executory contracts or unexpired leases of the Sellers are determined to be Assumed Contracts, as soon as practicable thereafter, the Debtors shall file with this Court and serve, by overnight delivery, on the Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than fourteen (14) days

thereafter. If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Assumed Contracts to the Stalking Horse Bidder (or if the Stalking Horse Bidder is not the Prevailing Bidder, then to the Prevailing Bidder) without further notice to creditors or other parties in interest and without the need for further order of this Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

xi. The Debtors' decision to assume and assign the Assumed Contracts to the Stalking Horse Bidder (or if the Stalking Horse Bidder is not the Prevailing Bidder, then to the Prevailing Bidder) is subject to this Court's approval and the closing of the Sale. Accordingly, absent this Court's approval and the closing of the Sale, the Assumed Contracts shall not be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these chapter 11 cases.

11. Within three (3) business days of this order, (I) the Debtors shall serve by first class mail, postage prepaid, copies of: (i) this Order; (ii) the Bidding Procedures; (iii) the Motion; (iv) the Sale Notice; and (v) the Assumption Notice, upon the following entities; (a) the Office of the United States Trustee for Region 3, serving the District of Delaware (the "**U.S. Trustee**"); (b) counsel to the Committee; (c) counsel to the DIP Agent; (d) counsel to the Debtors' prepetition and postpetition secured lenders, including Wells Fargo Capital Finance, LLC, as Agent Under the Revolving Loan Facility; (e) counsel to Certain Lenders Under the Term Facilities; (f) James Ktsanes, counsel to the Board; (g) all taxing authorities having jurisdiction over any of the Acquired Assets subject to the Sale, including the Internal Revenue Service; (h) the Environmental Protection Agency; (i) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (j) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (k) all persons or entities known to the Debtors that have or have asserted (including through recorded documents) a lien on, or security interest in, all or any portion of the Acquired Assets; (l) all Contract Parties; (m) counsel to the Stalking Horse Bidder; (n) all Potential Bidders previously identified or otherwise known to the Debtors; and (o) the Office of the United States Attorney for the District of Delaware (collectively, the

01:14607738.3

"**Notice Parties**") and (II) the Debtors shall serve by first class mail, postage prepaid, copies of the Sale Notice upon all other persons or entities that hold a claim, lien, interest or encumbrance against the Debtors or the Acquired Assets.

12. Not later than five (5) days after entry of an Order approving the Bidding Procedures Motion, the Debtors shall cause the Sale Notice to be published in the national edition of <u>The Wall Street Journal</u> and also in the <u>Philadelphia Inquirer</u>, pursuant to Bankruptcy Rule 2002(l). Such publication notice conforms to the requirements of Bankruptcy Rules 2002(l) and 9008 and is reasonably calculated to provide notice to any affected party that does not receive hard copy notice, including any Potential Bidders, and afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order and no other notice is required.

13. Any and all objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, together with proof of service, **on or before February 7, 2014 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"); and (e) be served, so as actually to be received, on or before the Sale Objection Deadline, upon (1) the Debtors, 1100 Northbrook Drive, Trevose, Pennsylvania 19053, Attn: J. Mark Borseth; (2) counsel to the Debtors, Dechert LLP, 1095 Avenue of the Americas, New York, NY 10036, Attn: Michael Sage (michael.sage@dechert.com), Brian Greer (brian.greer@dechert.com), and Stephen Wolpert (stephen.wolpert@dechert.com) and Young Conaway Stargatt & Taylor, LLP, 1000 North King

Street, Wilmington, DE 19801, Attn: Robert Brady (rbrady@ycst.com) and Sean Greecher (sgreecher@ycst.com); (3) financial advisors to the Debtors, Lincoln International LLC, 360 Madison Avenue, 21st Floor New York, NY 10017, Attn: Alexander Stevenson (astevenson@lincolninternational.com) and Jason Solganick (jsolganick @lincolninternational.com); (4) counsel to the Official Committee of Unsecured Creditors, Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attn: H. Jeffrey Schwartz (jschwartz@brownrudnick.com) and Bennett S. Silverberg (bsilverberg@brownrudnick.com); (5) counsel to the Stalking Horse Bidder, Foley & Lardner LLP, 500 Woodward Avenue, Detroit, Michigan 48243, Attn: Daljit S. Doogal and John A. Simon (ddoogal@foley.com and jsimon@foley.com); (6) counsel to the Agent Under the Revolving Loan Facility, Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Andrew M. Kramer; and (7) counsel to the Term Lenders, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 6054, Attn: Patrick J. Nash and 601 Lexington Avenue, New York, New York 10022, Attn: Brian E. Schartz. If a Sale Objection is not filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party may be barred from objecting to the Sale and may not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

14. The Sale Notice and notice of the Bidding Procedures, the Auction, the Sale Hearing, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Auction, the Sale, the Sale Hearing, and the assumption and assignment to the Stalking Horse Bidder (or if the Stalking Horse Bidder is not the Prevailing Bidder, then to the

01:14607738.3

Prevailing Bidder) of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notice and objection periods are hereby approved.

15. Failure to file a Sale Objection on or before the Sale Objection Deadline shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code.

16. The Break-Up Fee and Expense Reimbursement, as set forth in the Agreement, are hereby approved. In accordance with the terms set forth in the Agreement, the Debtors are authorized to pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder without further order of the Court.

17. Pursuant to section 364 of the Bankruptcy Code, solely to the extent provided in the Agreement, the Break-Up Fee and Expense Reimbursement, to the extent they become payable under the Agreement, shall constitute allowed superpriority claims with priority over any and all administrative expenses, payable out of the Debtors' cash or other collateral securing the Debtors' obligations, which shall be senior to any and all liens and claims of any creditors of or holders of equity interests in the Debtors, including pre-petition and post-petition amounts owing to the Debtors' pre-petition and post-petition secured lenders, provided that any such claim with respect to Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement shall be junior to the final payment and satisfaction in full of any claims (pre- and post-petition) of Wells Fargo Capital Finance, L.L.C. (the "**Revolving Loan Agent**"), but only to the extent of Revolving Loan Agent or its affiliates' actual participation under (i) the Revolving Loan Facility and (ii) the debtor-in-possession financing under the Ratification and Amendment Agreement dated as of December 20, 2013, and not junior to the extent of participation by lenders other than the Revolving Loan Agent or its affiliates, and provided that such Break-Up Fee and Expense Reimbursement are subject, with respect to Black Diamond

Capital Management, L.L.C. and Solus Alternative Asset Management LP, to the terms of that certain Letter Agreement dated December 17, 2013 (the "**Letter Agreement**"). The Break-Up Fee and Expense Reimbursement shall not be discharged, modified, or otherwise affected by any plan of reorganization or liquidation for the Debtors.

18. The Court shall conduct the Sale Hearing commencing on February 10, 2014 at 12:00 p.m. (prevailing Eastern time), at which time, the Court will consider approval of the Sale to the Stalking Horse Bidder or the Prevailing Bidder.

19. Subject to the terms of the Letter Agreement, Black Diamond Capital Management, L.L.C and Solus Alternative Asset Management LP, each on its own behalf and behalf of certain managed funds, shall not credit bid their secured claims in the Auction, if any. The Stalking Horse Bidder may credit bid the Break-Up Fee and Expense Reimbursement.

20. Subject to the payment of the Break-Up Fee and Expense Reimbursement in accordance with this Order and the Agreement, the transaction fee, if any, payable to Lincoln Advisors under its engagement letter shall be payable from the proceeds of the Transaction before payments are made to any of the Debtors' secured creditors.

21. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

22. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 6006(d), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no stay of execution shall apply to this Order. Any stay of orders under Bankruptcy Rule 6004(h) or 6006(d) is expressly waived. The Debtors are

01:14607738.3

not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order and may without further delay take any action and perform any act authorized or approved under this Order.

24. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Dated: January 10, 2014
Wilmington, Delaware

*[signature]*

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

01:14607738.3