## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CONSTAR INTERNATIONAL HOLDINGS LLC, et al., | Case No. 13-13281 (CSS) |
|  | Jointly Administered |
| Debtors.[1] | **Re: Docket Nos. 21, 61, 190 & 208** |

### FINAL ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105, 364(c) AND 364(d); (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; AND (C) AUTHORIZING THE DEBTORS TO ENTER INTO AGREEMENTS WITH EACH OF WELLS FARGO CAPITAL FINANCE, LLC, AS REVOLVING AGENT, AND BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS DIP NOTE AGENT

Upon the motion (the "**Motion**"), dated December 19, 2013, of Constar International, LLC ("**Debtor**"), as Debtor and Debtor-in-Possession in the above-captioned Chapter 11 cases (the "**Cases**"), pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") and Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), as modified at the January 14, 2014 Final Hearing (the record of which is incorporated herein by reference), seeking, among other things:

(1)     authorization for Borrowers (as defined below) to continue to obtain, and for each of the Guarantors to guarantee unconditionally, on a joint and several basis,

---

[1]     The Debtors in these cases along with the last four digits of their federal tax identification number are: Constar International Holdings LLC (1880); Constar Group Holdings, Inc. (3047); Constar Intermediate Holdings, Inc. (4242); Constar Group, Inc. (4281); Constar International LLC (9304); BFF Inc. (1229); DT, Inc. (7693); Constar, Inc. (0950); Constar Foreign Holdings, Inc. (8591); and Constar International U.K. Limited (Foreign). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1100 Northbrook Drive, 2nd Floor, Trevose, PA 19053.

post-petition loans, advances and other financial accommodations on a final basis from Wells Fargo Capital Finance, LLC, in its capacity as agent (in such capacity, the "***Revolving Agent***") for itself and the other financial institutions from time to time party to the Existing Credit Agreement (as defined below) as lenders (collectively with Revolving Agent, the "***Revolving Lenders***") in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the Existing Credit Agreement, as amended and ratified by the Ratification Agreement (as defined below), the accompanying Budget (as defined below) and in accordance with the Interim Order (as defined below) and this Final Financing Order (as defined below), secured by security interests in and liens upon all of the Collateral (as defined below) pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

(2)      authorization for the Debtors to enter into, perform under, and comply in all respects with that certain Senior Secured Term Loan Priority Collateral Priming Super-Priority Debtor In Possession Note Purchase Agreement (the "***DIP Note Agreement***"), with Black Diamond Commercial Finance, L.L.C. ("***BDCF***"), as agent (the "***DIP Note Agent***"); BDCF and the other purchasers from time to time party thereto (collectively, the "***DIP Note Purchasers***"); Constar, Inc., Constar International LLC, Constar Foreign Holdings, Inc., BFF, Inc., and DT, Inc., each as issuers (each a "***DIP Note Borrower***" and, collectively, the "***DIP Note Borrowers***"); and Constar Group, Inc. and each of its subsidiaries other than Constar International Holland (Plastics) B.V., as guarantors (the "***DIP Note Guarantors***"), a copy of which is attached hereto as **Exhibit A**;

(3)      authorization for the Borrowers and the Guarantors to continue performing under and complying in all respects with that certain Ratification and Amendment Agreement, dated as of December, 20, 2013, by and among the Revolving Agent, the Revolving Lenders, Constar, Inc., a corporation incorporated under the laws of the Commonwealth of

01:14694868.6

-2-

Pennsylvania ("*Constar*"), Constar International LLC, a Delaware limited liability company ("*Constar International*", and together with Constar and each of their respective successors and assigns, each a "*US Borrower*" and collectively, the "*US Borrowers*"), Constar International U.K. Limited, a company incorporated in England and Wales with company number 02407933 (together with its successors and assigns, "*Constar UK*" or "*UK Borrower*" and, together with the US Borrowers, each individually, a "*Borrower*", and collectively, the "*Borrowers*"), Constar Group Inc., a corporation incorporated under the laws of the State of Delaware ("*Parent*"), Constar Foreign Holdings Inc., a corporation incorporated under the laws of the State of Delaware ("*Holdings*"), BFF Inc., a corporation incorporated under the laws of the State of Delaware ("*BFF*"), DT, Inc., a corporation incorporated under the laws of the State of Delaware ("*DT*", and together with Parent, Holdings, BFF and each of their respective successors and assigns, each individually, a "*Guarantor*" and, collectively, the "*Guarantors*") (the "*Ratification Agreement*", a copy of which is annexed to the Interim Order as <u>Exhibit A</u> and is incorporated herein), which ratifies, extends, adopts and amends the Existing Credit Agreement and the other Revolving Loan Documents (each as defined below);

(4)     authorization for the DIP Note Borrowers to issue, and for the DIP Note Guarantors to guarantee unconditionally, post-petition notes issued by the DIP Note Borrowers and purchased by the DIP Note Purchasers under the DIP Note Agreement and in accordance with this Order, secured by security interests in and liens upon all of the Collateral (as defined below) pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code;

(5)     modification of the automatic stay to the extent hereinafter set forth;

(6)     granting the Revolving Agent, the Revolving Lenders, and the Bank Product Providers (the latter as defined in the Existing Credit Agreement) superpriority

administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Pre-Petition Obligations and Post-Petition Obligations (each as defined in the Ratification Agreement) (such obligations, collectively, the "*Revolving Loan Obligations*");

(7)    granting the DIP Note Agent and the DIP Note Purchasers superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all obligations incurred under the DIP Note Agreement and/or this Order (such obligations, the "*Term DIP Obligations*");

(8)    granting adequate protection to (a) Revolving Agent and Revolving Lenders (each in their respective capacities under the Existing Loan Documents (as defined below)) and (b) the Pre-Petition Term Agents and the Pre-Petition Term Lenders (each in their respective capacities under the Pre-Petition Term Documents (as defined below)) as set forth herein; and

(9)    authorization for the Debtors to use "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code ("*Cash Collateral*"), subject to the liens and security interests of the Revolving Agent, Revolving Lenders, the Pre-Petition Term Agents, and the Pre-Petition Term Lenders pursuant to Sections 361 and 363 of the Bankruptcy Code in accordance with the terms of this Order.

The initial hearing on the Motion having been held by this Court on December 20, 2013 (the "*Interim Hearing*"), and the order approving the relief requested therein having been entered on December 20, 2013 (as more fully defined below, the "*Interim Order*") [Docket No. 61].

It appearing that due and appropriate notice (the "*Notice*") of the Motion, the relief requested therein, the Interim Hearing, the Interim Order, this Final Financing Order and the final hearing on the Motion (the "*Final Hearing*") held on January 9, 2014, as extended and

01:14694868.6

adjourned to January 14, 2014, upon consent and pursuant to the order of this Court, dated January 10, 2014, having been served by the Debtors in accordance with Rule 4001(c) on (i) Revolving Agent, (ii) Wilmington Trust, National Association, as the "DIP Note Agent" under the Interim Order; (iii) the Office of the United States Trustee for the District of Delaware (the "*U.S. Trustee*"), (iv) counsel to the Official Committee of Unsecured Creditors, (v) the Internal Revenue Service, (vi) all appropriate state taxing authorities, (vii) all landlords, owners, and/or operators of premises at which any of the Debtors' inventory and/or equipment are located, (viii) the other lienholders listed on Exhibit D to the Motion, and (ix) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded pre-petition liens or security interests against any of the Debtor's assets (collectively, the "*Noticed Parties*").

Upon the record made by the Debtors at the Interim Hearing, including the Motion, and the filings and pleadings in the Case, and the Final Hearing, and good and sufficient cause appearing therefor; and the Court having heard and considered all objections to the Motion, and for the reasons set forth in the record of the Final Hearing, having approved replacement delayed draw note purchase facility term postpetition financing offered by BDCF and selected by the Debtors in an exercise of their sound business judgment following an auction process among BDCF and the DIP Note Purchasers (as such term is defined in the Interim Order);

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition.*    On December 19, 2013 (the "*Petition Date*"), each of the Debtors filed a voluntary petition (the "*Petition*") under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

01:14694868.6

B.      *Jurisdiction and Venue.* The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b) (2) (A), (D) and (M). Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      *Notice.* Under the circumstances, the Notice given by the Debtors of the Motion, the relief requested therein, the Interim Hearing, the Interim Order, the Final Hearing, and the relief granted under this Final Financing Order to the Notice Parties constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c).

D.      *Debtors' Acknowledgments and Agreements.* Subject to the parties' rights in Section 4.1 of this Final Financing Order, the Debtors admit, stipulate, acknowledge and agree that:

(i)      *Pre-Petition Revolving Loan Documents.* Prior to the commencement of the Cases, Revolving Agent, Revolving Lenders and Bank Product Providers made loans, advances and provided other financial accommodations to the Debtors pursuant to the terms and conditions set forth in: (1) the Credit Agreement, dated as of May 31, 2011, by and among Debtors, Revolving Agent and Revolving Lenders, as amended by Amendment No. 1 to Credit Agreement, dated as of July, 2012, Forbearance and Amendment No. 2 to Credit Agreement and Consent, dated as of November 18, 2013, and Amendment No.1 to Forbearance Agreement and Amendment No. 3 to Credit Agreement, dated as of December 6, 2013, and otherwise as in effect immediately prior to the Petition Date, the "***Existing Credit Agreement,***"[2]

---

[2]  Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the Existing Credit Agreement, as amended and ratified by the Ratification Agreement.

a copy of which is included with the Exhibit Supplement defined below, and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Revolving Agent, any Revolving Lender or any Bank Product Provider, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Existing Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the *"Existing Loan Documents"*).    Copies of the operative Existing Loan Documents are contained in the Exhibit Supplement to the Motion (the *"Exhibit Supplement"*).

(ii)    *Pre-Petition Revolving Obligations Amount.*    As of the close of business on December 18, 2013, the aggregate amount of all Advances, Letters of Credit, Bank Products and other Pre-Petition Revolving Obligations owing by Debtors to Revolving Agent, Revolving Lenders and Bank Product Providers under and in connection with the Existing Loan Documents was not less than $16,135,801.93, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, and as such term is more fully defined in the Ratification Agreement, the *"Pre-Petition Revolving Obligations"*). The Pre-Petition Revolving Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Revolving Obligations.

(iii)    *Pre-Petition Revolving Agent and Pre-Petition Revolving Lenders.*
No claims, objections, challenges, counterclaims, causes of action and/or choses in action, defenses or setoff rights of any Debtor exist against the Revolving Agent or the Revolving Lenders (each in their capacity as under the Existing Credit Agreement) under the Existing Credit Agreement and their respective Pre-Petition Revolving Loan Obligations under any contract or tort (including, without limitation, lender liability) theories of recovery, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 (including, without limitation, sections 510, 544, 547, 548, 549 or 550) of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and to the extent any claims, objections, challenges, counterclaims, causes of action and/or choses in action, defense or setoff rights are deemed to have existed as to any of the foregoing, the Debtors hereby forever waive, discharge and release any right they may have to challenge any of the Pre-Petition Revolving Loan Obligations, and to assert any setoff rights, defenses, claims, objections, challenges, counterclaims, causes of action and/or choses of action whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the Revolving Agent and the Revolving Lenders (only in their capacities as parties pursuant to the Existing Credit Agreement), and as to each of the foregoing, their respective affiliates, funds, subsidiaries, agents, officers, directors, managers, employees, attorneys and advisors, in each case in connection with any matter related to the Pre-Petition Revolving Loan Obligations and the Existing Credit Agreement, or the financing and transactions contemplated thereby, or the Pre-Petition Revolving Loan Collateral (as defined below).

(iv)    *Pre-Petition Revolving Loan Collateral.*  As of the Petition Date, the Pre-Petition Revolving Obligations were fully secured pursuant to the Existing Loan Documents by valid, perfected, enforceable and non-avoidable first (or, solely to the extent

provided in the Intercreditor Agreement (as hereinafter defined), second) priority security interests and liens granted by Debtors to Revolving Agent, for the benefit of itself, the other Revolving Lenders and the Bank Product Providers (hereinafter referred to as the *"Revolving Secured Parties"*), upon all of the Pre-Petition Collateral (as defined in the Existing Credit Agreement and hereinafter defined as the *"Pre-Petition Revolving Loan Collateral"*), subject only to (a) the terms of the Intercreditor Agreement, and (b) the liens specifically permitted under Section 4.4(b) of the Existing Credit Agreement to the extent that such security interests, liens or encumbrances are (A) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (B) senior to and have not been or are subject to being subordinated to Revolving Agent's and Revolving Secured Parties' liens on and security interests in the Pre-Petition Revolving Loan Collateral or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (hereinafter referred to as the *"Revolving Permitted Encumbrances"*).  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Revolving Agents and Revolving Secured Parties' liens, claims or security interests in the Pre-Petition Revolving Loan Collateral.

(v)     *Pre-Petition Revolving Proof of Claim.*  The acknowledgment by Debtors of the Pre-Petition Revolving Obligations and the liens, rights, priorities and protections granted to or in favor of Revolving Agent and Revolving Secured Parties as set forth herein and in the Existing Revolving Loan Documents shall be deemed a timely filed proof of claim on behalf of Revolving Agent and Revolving Secured Parties in this Case.

(vi)    *Prepetition Term Loan Agreements.*

(a) *Pre-Petition Roll-Over Agreement.* Prior to the commencement of these cases, pursuant to that certain (1) Credit Agreement dated as of May 31, 2011 (as amended, supplemented or otherwise modified on or before December 18, 2013, the "***Pre-Petition Roll-Over Credit Agreement***") by and among Constar, Constar International, Constar UK, Holdings, DT, Inc. and BFF, each as a borrower (each in such capacity, the "***Roll-Over Borrowers***"), Constar Group, Inc. ("***Constar Group***"), as a parent guarantor, the several banks and other financial institutions or entities from time to time parties thereto, as lenders (collectively, in such capacity, the "***Pre-Petition Roll-Over Secured Lenders***") and Black Diamond Commercial Finance, L.L.P. ("***BCDF***", as administrative agent and collateral agent for the Pre-Petition Roll-Over Secured Lenders (in such capacity, the "***Pre-Petition Roll-Over Credit Agent***") and (2) Note Purchase Agreement dated as of May 31, 2011 (as amended, supplemented or otherwise modified on or before December 18, 2013, the "***Pre-Petition Roll-Over Note Purchase Agreement***" and, together with the Pre-Petition Roll-Over Credit Agreement, the "***Pre-Petition Roll-Over Agreement***") by and among Constar, Constar International, Constar UK, Holdings, DT, and BFF, each as an issuer (each in such capacity, the "***Roll-Over Issuers***" and, together with the Roll-Over Borrowers, the "***Roll-Over Debtors***"), Constar Group, as a parent guarantor, the several banks and other financial institutions or entities from time to time parties thereto, as purchasers (collectively, in such capacity, the "***Pre-Petition Roll-Over Secured Purchasers***" and, together with the Pre-Petition Roll-Over Secured Lenders, the "***Pre-Petition Roll-Over Secured Debt Holders***") and BDCF, as administrative agent and collateral agent for the Pre-Petition Roll-Over Secured Purchasers (in such capacity, the "***Pre-Petition Roll-Over Note Purchase Agent***" and, together with the Pre-Petition Roll-Over Credit Agent, the "***Pre-Petition Roll-Over Agent***"), the Pre-Petition Roll-Over Secured Debt Holders

made certain loans and certain other financial accommodations to or for the benefit of the Roll-Over Debtors. The Pre-Petition Roll-Over Agreement and any other agreements, instruments, notes, guaranties and other documents executed in connection therewith are collectively referred to herein as "*Pre-Petition Roll-Over Documents*", copies of which are on file with counsel to the Debtors and available upon request.

(b)     *Pre-Petition Roll Over Obligations.* All obligations of the Roll-Over Debtors and the other Debtors arising under the Pre-Petition Roll-Over Documents, including all loans, advances, debts, liabilities, principal, interest, fees, swap exposure, charges, expenses, indemnities, and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Pre-Petition Roll-Over Agent or any Pre-Petition Roll-Over Secured Debt Holder, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "*Pre-Petition Roll-Over Obligations.*"

(c)     *Pre-Petition Shareholder Agreement.* Pursuant to that certain (1) Credit Agreement dated as of May 31, 2011 (as amended, supplemented or otherwise modified on or before December 18, 2013, the "*Pre-Petition Shareholder Credit Agreement*") by and among Constar, Constar International, Constar UK, Holdings, DT, and BFF, each as a borrower (each in such capacity, the "*Shareholder Borrowers*"), Constar Group, as a parent guarantor, the several banks and other financial institutions or entities from time to time parties thereto, as lenders (collectively, in such capacity, the "*Pre-Petition Shareholder Secured Lenders*") and BDCF, as administrative agent and collateral agent for the Pre-Petition Shareholder Secured Lenders (in such capacity, the "*Pre-Petition Shareholder Credit Agent*"), the Pre-Petition Shareholder Secured Lenders made certain term loans and certain other financial accommodations to or for the benefit of the Shareholder Borrowers and (2) Note Purchase

Agreement dated as of May 31, 2011 (as amended, supplemented or otherwise modified on or before December 18, 2013, the *"Pre-Petition Shareholder Note Purchase Agreement"* and, together with the Pre-Petition Shareholder Credit Agreement, the *"Pre-Petition Shareholder Agreement"*) by and among Constar, Constar International, Constar UK, Holdings, DT, and BFF, each as an issuer (each in such capacity, the *"Shareholder Issuers"* and, together with the Shareholder Borrowers, the *"Shareholder Debtors"*), Constar Group, as a parent guarantor, the several banks and other financial institutions or entities from time to time parties thereto, as purchasers (collectively, in such capacity, the *"Pre-Petition Shareholder Secured Purchasers"* and, together with the Pre-Petition Shareholder Secured Lenders, the *"Pre-Petition Shareholder Secured Debt Holders"*) and BDCF, as administrative agent and collateral agent for the Pre-Petition Shareholder Secured Purchasers (in such capacity, the *"Pre-Petition Shareholder Note Purchase Agent"* and, together with the Pre-Petition Shareholder Credit Agent, the *"Pre-Petition Shareholder Agent"*), the Pre-Petition Shareholder Secured Debt Holders made certain term loans and made certain other financial accommodations to or for the benefit of the Shareholder Debtors. The Pre-Petition Shareholder Agreement and any other agreements, instruments, notes, guaranties and other documents executed in connection therewith are collectively referred to herein as *"Pre-Petition Shareholder Documents,"* together with the Pre-Petition Roll- Over Documents, collectively, the *"Pre-Petition Term Documents"* , copies of which are on file with counsel to the Debtors and available upon request.

(d)      *Pre-Petition Shareholder Obligations.*  All obligations of the Shareholder Debtors and the other Debtors arising under the Pre-Petition Shareholder Documents, including all loans, advances, debts, liabilities, principal, interest, fees, swap exposure, charges, expenses, indemnities, and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Pre-Petition Shareholder

Agent or any Pre-Petition Shareholder Secured Debt Holders, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the *"Pre-Petition Shareholder Obligations"* (and, together with the Pre-Petition Roll-Over Obligations, the *"Pre-Petition Term Obligations"*).

(vii)    *Pre-Petition Term Obligations Amount.*    As of the close of business on December 18, 2013, the aggregate amount of all term loans and other Pre-Petition Term Obligations owing by Debtors to Pre-Petition Term Agents and Pre-Petition Term Lenders under and in connection with the Pre-Petition Term Documents was not less than $102,920,296.00, consisting of $15,000,000.00 owing to the Pre-Petition Roll-Over Agent and Pre-Petition Roll-Over Secured Debt Holders under the Pre-Petition Roll-Over Documents and $87,920,296.00 owing to the Pre-Petition Shareholder Agent and Pre-Petition Shareholder Secured Debt Holders under the Pre-Prepetition Shareholder Documents, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, and as such term is more fully defined in the Ratification Agreement, the *"Pre-Petition Term Obligations"*).    The Pre-Petition Term Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Term Obligations.

(viii)    *Pre-Petition Term Lenders, Pre-Petition Term Agents.* No claims, objections, challenges, counterclaims, causes of action and/or choses in action, defenses or setoff rights of any Debtor exist against the Pre-Petition Roll-Over Agent, Pre-Petition Roll-Over

Secured Debt Holders, Pre-Petition Shareholder Agent, and Pre-Petition Shareholder Secured Debt Holders (each in their capacity under the applicable Pre-Petition Term Documents, the *"Pre-Petition Term Secured Parties"*) and their respective Pre-Petition Term Obligations under any contract or tort (including, without limitation, lender liability) theories of recovery, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 (including, without limitation, sections 510, 544, 547, 548, 549 or 550) of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and to the extent any claims, objections, challenges, counterclaims, causes of action and/or choses in action, defense or setoff rights are deemed to have existed as to any of the foregoing, the Debtors hereby forever waive, discharge and release any right they may have to challenge any of the Pre-Petition Term Obligations, and to assert any setoff rights, defenses, claims, objections, challenges, counterclaims, causes of action and/or choses of action whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the Pre-Petition Term Agents and the Pre-Petition Term Secured Parties (each in their respective capacities under the Pre-Petition Term Agreements), and as to each of the foregoing, their respective affiliates, funds, subsidiaries, agents, officers, directors, managers, employees, attorneys and advisors, in each case in connection with any matter related to the Pre-Petition Term Obligations and the Pre-Petition Term Agreements or the financing and transactions contemplated thereby, or the Pre-Petition Term Loan Collateral (as defined below).

(ix)     *Pre-Petition Term Loan Collateral.*  As of the Petition Date, the Pre-Petition Term Obligations were secured pursuant to the Pre-Petition Term Documents by valid, perfected, enforceable and non-avoidable first (or, solely to the extent provided in the Intercreditor Agreement (as hereinafter defined), second) priority security interests and liens granted by Debtors to Pre-Petition Term Agents, for the benefit of themselves and, the Pre-

Petition Secured Parties, upon all of the Pre-Petition Collateral (as defined in the Pre-Petition Term Agreements and hereinafter defined as the "***Pre-Petition Term Loan Collateral***" and, together with the Pre-Petition Revolving Loan Collateral, the "***Pre-Petition Collateral***"), subject only to (a) the terms of the Intercreditor Agreement, and (b) the liens specifically permitted under Section 1.2 of Annex D to the Prepetition Roll-Over Credit Agreement and Section 1.2 of Annex D to the Prepetition Shareholder Credit Agreement to the extent that such security interests, liens or encumbrances are (A) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (B) senior to and have not been or are subject to being subordinated to Pre-Petition Terms Agents' and Pre-Petition Secured Parties' liens on and security interests in the Pre-Petition Term Loan Collateral or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (hereinafter referred to as the "***Term Permitted Encumbrances***"). The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Pre-Petition Term Agents' and Pre-Petition Secured Parties' liens, claims or security interests in the Pre-Petition Term Loan Collateral.

(x)     *Pre-Petition Term Proof of Claim.*    The acknowledgment by Debtors of the Pre-Petition Term Obligations and the liens, rights, priorities and protections granted to or in favor of Pre-Petition Term Agents and Pre-Petition Secured Parties as set forth herein and in the Pre-Petition Term Documents shall be deemed a timely filed proof of claim on behalf of Pre-Petition Term Agents and Pre-Petition Secured Parties in these Cases.

(xi)     *Intercreditor Agreements.*

(a) Revolving Agent, Pre-Petition Roll-Over Agent, Pre-Petition Shareholder Agent and the Debtors are parties to the Intercreditor Agreement, dated  May 31,

01:14694868.6

-15-

2011 (the "*Intercreditor Agreement*"), which sets forth the respective rights, obligations and priorities of the liens and security interests of Revolving Agent, Revolving Lenders, Pre-Petition Roll-Over Agent, and Pre-Petition Shareholder Agent with respect to the Pre-Petition Revolving Loan Collateral and the Pre-Petition Term Loan Collateral. Nothing in this Final Financing Order shall modify the terms of Intercreditor Agreement, and the rights, priorities and obligations set forth thereunder.

(b)   Pre-Petition Roll-Over Agent, the Pre-Petition Shareholder Agent and the Debtors are parties to that certain Term Intercreditor Agreement, dated as of May 31, 2011 (the "*Pre-Petition Term Intercreditor Agreement*"), which sets forth the respective rights, obligations and priorities of the liens and security interests of Pre-Petition Roll-Over Agent, and Pre-Petition Shareholder with respect to the Pre-Petition Term Loan Collateral. Nothing in this Final Financing Order shall modify the terms of the Pre-Petition Term Intercreditor Agreement, and the rights, priorities and obligations set forth thereunder.

E.    *Findings Regarding the Postpetition Financing.*

(i)    *Postpetition Financing.*   The Debtors have requested from (a) Revolving Agent, Revolving Lenders and Bank Product Providers, and Revolving Agent, Revolving Lenders and Bank Product Providers are willing to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth in this Final Financing Order and the Revolving Loan Documents (as defined below) and (b) DIP Note Agent and DIP Note Purchasers, and DIP Note Agent and DIP Note Purchasers are willing to purchase debt notes on the terms and conditions set forth in this Final Financing Order and the DIP Note Agreement, if any.

(ii)    *Need for Post-Petition Financing.*   The Debtors do not have sufficient available sources of working capital, including Cash Collateral, to operate their

businesses in the ordinary course of their businesses without the financing requested under the Motion. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estate (as defined below) for the benefit of all creditors of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with each of Revolving Agent, Revolving Lenders and Bank Product Providers, as set forth in this Final Financing Order and the Revolving Loan Documents, and the DIP Note Agent and DIP Note Purchasers, as set forth in this Final Financing Order and the DIP Note Agreement, is vital to the preservation and maintenance of the going concern values of the Debtors. Accordingly, the Debtors have an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "*Estates*") in order to maximize the recovery to all creditors of the Estate.

(iii)    *Interim Order*.    On December 20, 2013, this Court entered the Order (A) Authorizing the Debtors to Obtain Interim Post-Petition Financing and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. §§ 362; (C) Authorizing the Debtors to Enter into Agreements with each of Wells Fargo Capital Finance, LLC, as Revolving Agent, and Wilmington Trust, National Association, as DIP Note Agent thereunder; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001, as extended and amended by Order of this Court, dated January 10, 2014 [Docket No. 190], as further extended and amended by Order of this Court, dated January 15, 2014 [Docket No. 208], pursuant to

01:14694868.6

-17-

which, inter alia, (a) the Debtors were authorized (i) to obtain post-petition loans, advances and other financial accommodations on an interim basis for a period through and including the date of the Final Hearing pursuant to the Existing Credit Agreement, secured by security interests in and liens upon all of the Collateral pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, (ii) to enter into a note purchase facility as described in that certain Term Sheet for a Senior Secured Term Loan Priority Collateral Priming Super-Priority DIP Note Purchase Facility with the DIP Note Agent (as defined in the Interim Order), (iii) to enter into a certain Ratification and Amendment Agreement, by and among the Revolving Agent, the Revolving Lenders, Debtors, and Guarantors, (b) the DIP Note Borrowers were authorized to issue post-petition notes issued by the DIP Note Borrowers and purchased by the DIP Note Purchasers under the DIP Term Sheet (each as defined in the Interim Order and referred to in the DIP Motion), secured by security interests in and liens upon all of the Collateral pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (c) the Revolving Agent, the Revolving Lenders, and the Bank Product Providers were granted superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Revolving Loan Obligations, (d) the DIP Note Agent and the DIP Note Purchasers were granted superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all obligations incurred under the DIP Term Sheet, the DIP Note Agreement, and/or under the Interim Order, (e) the (i) Revolving Agent and Revolving Lenders and (ii) the Pre-Petition Term Agents and the Pre-Petition Term Lenders were granted certain adequate protection to the extent set forth in the Interim Order, and (f) the Debtors were authorized to use Cash Collateral, subject to the liens and security interests of the Revolving Agent, Revolving Lenders, the Pre-Petition Term Agents, and the Pre-Petition Term Lenders pursuant to Sections 361 and 363 of the Bankruptcy Code in accordance with the terms of the Interim Order.

(iv)     *No Credit Available on More Favorable Terms.* The Debtors have been unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, without the grant of liens on assets. The Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by Revolving Agent, Revolving Lenders and Bank Product Providers pursuant to the Revolving Loan Documents and DIP Note Agent and DIP Note Purchasers pursuant to the Term Loan Documents.

(v)     *Budget.* The Debtors have prepared and delivered to Revolving Agent, Revolving Lenders, Bank Product Providers, DIP Note Agent and DIP Note Purchasers a revised Budget (as defined in the Ratification Agreement), a copy of which is annexed to this Final Financing Order as **Exhibit B**. Such Budget has been thoroughly reviewed by the Debtors and their management and professionals and sets forth, among other things, the projected information for the periods covered thereby. The Debtors represent that the Budget is achievable in accordance with the terms of the Revolving Loan Documents, the DIP Note Agreement, and this Final Financing Order and will allow the Debtors to operate at all times during these Cases. Revolving Agent, Revolving Lenders, Bank Product Providers, DIP Note Agent and DIP Note Purchasers are relying upon the Debtors' compliance with the Budget in accordance with, among other sections, Section 5.3 of the Ratification Agreement and the DIP Note Agreement, the other Revolving Loan Documents and this Final Financing Order in determining to enter into the post-petition financing arrangements provided for herein. Any and all cash and cash equivalents shall be used by the Debtors in accordance with this Final Financing Order and the Budget, subject to permitted variances as provided for in the Revolving Loan Documents and the DIP Note

Purchase Agreement.  The consent of the Revolving Agent, Revolving Lenders, DIP Note Agent and DIP Note Purchasers to the Budget shall not be construed as consent to the use of any cash after the occurrence of an Event of Default (as defined in the applicable Revolving Loan Documents or Term Loan Documents), regardless of whether the aggregate funds shown on the Budget have been expended.  Notwithstanding anything to the contrary set forth in the Ratification Agreement, this Final Financing Order, or any of the other Revolving Loan Documents and Term Loan Documents, the Revolving Agent and the DIP Note Agent shall be provided with weekly (not daily) reporting with respect to disbursements by Borrowers, and such disbursement in accordance with the Budget (subject to variances with respect thereto permitted) shall not be subject to daily review or reconciliation with the Budget by the Revolving Agent and the DIP Note Agent (which review and reconciliation shall be concluded weekly).

(vi)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms of the Revolving Loan Documents (as defined below), the Term Loan Documents (as defined below) and this Final Financing Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and is supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Revolving Loan Documents, the Term Loan Documents and this Final Financing Order have been negotiated in good faith and at arms' length by and among the Debtors, on one hand, and Revolving Agent, Revolving Lenders, Bank Product Providers, DIP Note Agent and DIP Note Purchasers on the other hand, with all parties being represented by counsel.  Any credit extended under the terms of this Final Financing Order shall be deemed to have been extended in good faith by each of Revolving Agent, Revolving Lenders, Bank Product

Providers, DIP Note Agent and DIP Note Purchasers as that term is used in Section 364(e) of the Bankruptcy Code.

(vii)    *Good Cause.*  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' business and on-going operations, (b) preserve and maximize the value of the Estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

(viii)    *Immediate Entry.*  Sufficient cause exists for immediate entry of this Final Financing Order pursuant to Bankruptcy Rule 4001(c)(2).  No party appearing in these Cases has filed or made an objection to the relief sought in the Motion or the entry of this Final Financing Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

(ix)    *Official Committee of Unsecured Creditors.*  On January 6, 2014 (the "***Committee Appointment Date***"), the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "***Committee***") in accordance with Section 1102(a)(1) of the Bankruptcy Code.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    *Authorization and Conditions to Financing.*

1.1    *Motion Granted.*  The Motion is granted (as modified with respect to the DIP Note Agreement as set forth on the record at the Final Hearing) in accordance with

01:14694868.6

Bankruptcy Rule 4001(c)(2) to the extent provided in this order (the *"Final Financing Order"*).

      1.2    *Authorization to Borrow and Use Loan Proceeds.*

      1.2.1  *Revolving Loans.* The Debtors were by the Interim Order and hereby are expressly authorized and empowered to continue to borrow and obtain, and the Guarantors were by the Interim Order and are hereby authorized to guaranty, Advances, Letters of Credit, Bank Products and to continue to incur indebtedness and obligations owing to Revolving Agent, Revolving Lenders and Bank Product Providers pursuant to the terms and conditions of this Final Financing Order, the Existing Credit Agreement, as ratified and amended by the Ratification Agreement (the *"Credit Agreement,"* as such term is more fully defined in the Ratification Agreement), and the other Existing Revolving Loan Documents as ratified and amended by the Ratification Agreement (the *"Revolving Loan Documents"*, as such term is more fully defined in the Ratification Agreement), in such amounts as may be made available to the Debtors by the Revolving Agent and Revolving Lenders in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the Ratification Agreement, this Final Financing Order and the Budget. Subject to the terms and conditions contained in this Final Financing Order and the Revolving Loan Documents, Debtor may use the proceeds of the Advances and any other credit accommodations provided to Debtor pursuant to this Final Financing Order, the Credit Agreement or the other Revolving Loan Documents for the payment of the expense items specified in the Budget.

      1.2.2  *Term Loans.* The Debtors are authorized and directed to issue notes constituting the replacement New Money Facility (as such term is defined in the DIP Note Agreement) pursuant to the terms and conditions of this Final Financing Order, the DIP Note Agreement, and the other Pre-Petition Term Documents (the *"Term Loan Documents,"* and,

01:14694868.6

-22-

together with the Revolving Loan Documents, the "***DIP Loan Documents***"), in such amounts as may be made available to the Debtors by the DIP Note Agent and DIP Note Purchasers in accordance with the Budget (and including, for the avoidance of doubt, an amount reflected in the Budget to pay allowable or allowed claims under Section 503(b)(9) of the Bankruptcy Code). Contemporaneous with the closing of the sale of substantially all of the Debtors' U.S. assets, an escrow (the "***503(b)(9) Escrow***") shall be funded solely by DIP Note Agent and DIP Note Purchasers (in a manner reasonably acceptable to the DIP Note Agent, Debtors, and the Committee) in an amount equal to the sum of the line items in the Budget for claims arising under section 503(b)(9) of the Bankruptcy Code, less any amounts actually paid by the Debtors on account of such claims prior to the closing of such sale. Funds held within the 503(b)(9) Escrow shall be used by the Debtors' estates to pay such claims, subject to their allowance by the Court. The funds in the 503(b)(9) Escrow shall remain subject to the liens held by the Revolving Agent, the Revolving Lenders, the DIP Note Agent, the DIP Note Purchasers, the Revolving Secured Parties, and the Pre-Petition Term Secured Parties. It is expressly agreed that the Revolving Agent and Revolving Lenders are not obligated to make Advances to Debtors or to otherwise fund such allowed 503(b)(9) claims. Subject to the terms and conditions contained in this Final Financing Order and the Term Loan Documents, the Debtors may use the proceeds of the loans and any other credit accommodations provided to the Debtors pursuant to this Final Financing Order, or the other Term Loan Documents for the payment of the expense items specified in the Budget. The fees contemplated to be paid to the DIP Note Purchasers and the DIP Note Agent in the DIP Note Agreement are authorized and approved and shall not be subject to challenge, including a challenge of the type described in Section 4.1.2 of this Final Financing Order.

1.3    *Revolving Loan Documents.*

1.3.1    *Authorization.* The Debtors were by the Interim Order and hereby are authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Credit Agreement and the other Revolving Loan Documents, pursuant to which, subject to Section 4.1.1 below, inter alia, each Debtor ratifies, reaffirms, extends, assumes, adopts, amends, and restates the Existing Credit Agreement and the other Pre-Petition Revolving Loan Documents to which it is a party, including, without limitation, the Blocked Account Agreement with Notice, dated as of June 17, 2011, by and among Constar, Revolving Agent, the Pre-Petition Term Agents, and the Blocked Account Bank (as amended, the "***Blocked Account Agreement***"), and the Pre-Petition Revolving Obligations, which include, without limitation, all Advances, Letters of Credit, Bank Products and all other financial accommodations provided to Debtors by the Revolving Lenders pursuant to the Pre-Petition Revolving Loan Documents (each term as defined on the Pre-Petition Revolving Loan Documents), will, as funds are borrowed and repaid in accordance with this Final Financing Order, be deemed for all purposes a part of and to have been incurred under, the Revolving Loan Documents (such rolled amounts, the "***Post-Petition Revolving Obligations***"). Upon execution and delivery of the Ratification Agreement, the Revolving Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the Revolving Loan Documents and this Final Financing Order. No obligation, payment, transfer or grant of security under the Revolving Loan Documents or this Final Financing Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

01:14694868.6

-24-

1.3.2 *Approval.* The Revolving Loan Documents (including, without limitation, the Credit Agreement) are approved to the extent necessary to implement the terms and provisions of this Final Financing Order. All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors, Revolving Agent and Revolving Lenders, and of each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Credit Agreement and the other Revolving Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Revolving Loan Obligations arising thereunder, including, without limitation, all principal, interest, commissions, letter of credit fees, servicing fees, unused line fees, DIP facility fee, early termination fees, and other fees and expenses, including, without limitation, all of Revolving Agent's and Revolving Lenders' consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Revolving Loan Documents (with such invoices for legal fees and expenses to be provided to the Committee and the U.S. Trustee on the date it is provided to the Debtors); provided, that (a) the Debtors, the U.S. Trustee and the Committee shall have ten (10) days from receipt to review the legal invoices of Revolving Agent and Revolving Lenders for reasonableness and (b) in the event the Debtors, the U.S. Trustee or Committee shall file with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, the portion of such legal invoice subject to such objection shall not be paid until resolution of such objection by this Court and (c) in the event none of the Debtors, the U.S. Trustee or the Committee shall file with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, such legal invoice shall not be subject to any further review or challenge.

1.3.3 *Amendment.* Subject to the terms and conditions of the Credit Agreement and the other Revolving Loan Documents, Debtors, Revolving Agent and Revolving

Lenders (each in their respective capacities under the Revolving Loan Documents) may amend, modify, supplement or waive any provision of the Revolving Loan Documents (a "**Revolving Loan Amendment**") without further approval or order of the Court so long as (i) such Revolving Loan Amendment is not material (for purposes hereof, a "material" Revolving Loan Amendment shall mean, any Revolving Loan Amendment that operates to increase the interest rate other than as currently provided in the Revolving Loan Documents, increase the Maximum Credit (as defined in the Credit Agreement), add specific new events of default or enlarge the nature and extent of default remedies available to the Revolving Agent and Revolving Lenders following an event of default, or otherwise modify any terms and conditions in any Revolving Loan Document in a manner materially less favorable to Debtors) and is undertaken in good faith by Revolving Agent, Revolving Lenders and Debtors, and (ii) the Debtors provide prior written notice of the Revolving Loan Amendment (the "**Revolving Loan Amendment Notice**") to (x) the U.S. Trustee, (y) counsel to any official committee appointed in the Cases under Section 1102 of the Bankruptcy Code (collectively, the "**Committee(s)**") and (z) counsel to the Pre-Petition Term Loan Agents and DIP Note Agent. Any material Revolving Loan Amendment to the Revolving Loan Documents must be approved by the Court to be effective.

      1.4    *Term Loan Documents.*

      1.4.1   *Authorization.* The Debtors were by the Interim Order and hereby are expressly authorized to continue to enter into, execute, deliver, perform, and comply with, and the Guarantors were by the Interim Order and are hereby authorized to guaranty, all of the terms, conditions and covenants of the DIP Note Agreement and the other Term Loan Documents, including, without limitation, to continue to issue notes under the New Money Facility. Upon execution and delivery of the Term Loan Documents, the Term Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor

party thereto in accordance with the terms of the Term Loan Documents and this Final Financing Order. No obligation, payment, transfer or grant of security under the Term Loan Documents or this Final Financing Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

        1.4.2 *Approval.* The Term Loan Documents (including, without limitation, the DIP Note Agreement) are approved to the extent necessary to implement the terms and provisions of this Final Financing Order, including, without limitation, the terms and provisions pertaining to the New Money Facility and the Roll Up Facility. All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors, the DIP Note Agent and DIP Note Purchasers, and of each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the DIP Note Agreement and the other Term Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Post-Petition Term Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of the DIP Note Agent's and DIP Note Purchasers' consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Term Loan Documents (with such invoices for legal fees and expenses to be provided to the Committee and the U.S. Trustee on the date it is provided to the Debtors); provided, that (a) the Debtors, the U.S. Trustee and the Committee shall have ten (10) days from receipt to review the legal invoices of DIP Note Agent and DIP Note Purchasers for reasonableness and (b) in the event the Debtors, the U.S. Trustee or Committee shall file with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, the portion of such legal invoice subject to such

01:14694868.6

objection shall not be paid until resolution of such objection by this Court and (c) in the event none of the Debtors, the U.S. Trustee or the Committee shall file with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, such legal invoice shall not be subject to any further review or challenge.

        1.4.3  *Amendment.*  Subject to the terms and conditions of the DIP Note Agreement and the other Term Loan Documents, Debtors, DIP Note Agent and DIP Note Purchasers may amend, modify, supplement or waive any provision of the Term Loan Documents (a "***Term Loan DIP Amendment***") without further approval or order of the Court so long as (i) such Term Loan DIP Amendment is not material (for purposes hereof, a "material" Term Loan DIP Amendment shall mean, any Term Loan DIP Amendment that operates to increase the interest rate other than as currently provided in the Term Loan Documents, increase the principal amount of the DIP Term Loans, add specific new events of default or enlarge the nature and extent of default remedies available to the DIP Note Agent and DIP Note Purchasers following an event of default, or otherwise modify any terms and conditions in any Term Loan Document in a manner materially less favorable to Debtors) and is undertaken in good faith by the DIP Note Agent, DIP Note Purchasers and Debtors, and (ii) the Debtors provide prior written notice of the Term Loan DIP Amendment (the "***Term Loan DIP Amendment Notice***") to (x) the U.S. Trustee, (y) counsel to any Committee, and (z) counsel to the Revolving Agent and Revolving Lenders. Any material Term Loan DIP Amendment to the Term DIP Loan Documents must be approved by the Court to be effective.

        1.5  *Payment of Pre-Petition Debt.*  The Debtors are authorized to pay the Revolving Agent, Revolving Lenders and Bank Product Providers in respect of all Pre-Petition Revolving Obligations in accordance with the Revolving Loan Documents and Sections 1.6 and 1.7 of this Final Financing Order. Subject to the terms and conditions set forth in the DIP Note

Agreement, the Debtors are authorized to issue post-petition notes under the Roll Up Facility on account of Pre-Petition Term Obligations in accordance with the DIP Note Agreement and the record of the Final Hearing.

        1.6     *Payments and Application of Payments.*  The Debtors are authorized to make all payments and transfers of Estate property to Revolving Agent, Revolving Lenders and Bank Product Providers as provided, permitted and/or required under the Credit Agreement and the other Revolving Loan Documents, which payments and transfers shall not be avoidable or recoverable from Revolving Agent or any Revolving Secured Party under Section 547, 548, 550, 553 or any other Section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. All proceeds of the Revolving Loan Collateral received by Revolving Agent or any Revolving Secured Party and any other amounts or payments received by Revolving Agent or any Revolving Secured Party in respect of the Revolving Loan Obligations, shall be applied or deemed to be applied by Revolving Agent, Revolving Lenders and Bank Product Providers in accordance with the Credit Agreement, the other Revolving Loan Documents, the Interim Order, and this Final Financing Order, first to the Pre-Petition Revolving Obligations, until such Pre-Petition Revolving Obligations are indefeasibly paid in full and completely satisfied, and then to the Post-Petition Revolving Obligations. Without limiting the generality of the foregoing, and subject to Section 1.3.2 of this Final Financing Order, the Debtors are authorized, without further order of this Court, to pay or reimburse Revolving Agent, Revolving Lenders and Bank Product Providers for all present and future costs and expenses, including, without limitation, all reasonable professional fees, consultant fees and legal fees and expenses paid or incurred by Revolving Agent, Revolving Lenders and Bank Product Providers in connection with the financing transactions as provided in this Final Financing Order and the Loan Documents (the

"***Revolving Lender Group Professional Fees***"), all of which shall be and are included as part of the principal amount of the Post-Petition Revolving Obligations and secured by the Revolving Loan Collateral.

      1.7    *Continuation of Pre-Petition Procedures.* All pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to Revolving Agent, Revolving Lenders and Bank Product Providers and the funding pursuant to the Revolving Loan Documents, including any blocked, lockbox or depository account arrangements of Debtors, are hereby approved and shall continue without interruption after the commencement of the Cases, subject to the United States Trustee's requirements regarding depository accounts as set forth in the Cash Management Order.

      1.8    *Term Loan Payments.* The Debtors are authorized to make all payments and transfers of Estate property to the DIP Note Agent and DIP Note Purchasers as provided, permitted and/or required under the DIP Note Agreement and the other Term Loan Documents, which payments and transfers shall not be avoidable or recoverable from DIP Note Agent or any DIP Note Purchaser under Section 547, 548, 550, 553 or any other Section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. Without limiting the generality of the foregoing, and subject to Section 1.4.2 of this Final Financing Order, the Debtors are authorized, without further order of this Court, to pay or reimburse the DIP Note Agent and DIP Note Purchasers for all present and future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by DIP Note Agent and DIP Note Purchasers in connection with the financing transactions as provided in this Final Financing Order and the Term Loan Documents (the "***DIP Note Professional Fees***"), all of which shall be

and are included as part of the principal amount of the Term DIP Obligations and secured by the Term Loan Collateral.

Section 2.    *Postpetition Lien; Superpriority Administrative Claim Status.*

2.1    *Post-Petition Lien.*

2.1.1    *Revolving Loans Post-Petition Lien Granting.*    To secure the prompt payment and performance of any and all Post-Petition Revolving Obligations (including, without limitation, the Pre-Petition Revolving Obligations rolled into the Post-Petition Revolving Obligations in accordance with the terms hereof) of Debtors to Revolving Agent and Revolving Lenders (each in their respective capacities under the Revolving Loan Documents) of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Revolving Agent, for the benefit of itself and the other Revolving Lenders and the Bank Product Providers (each in their respective capacities under the Revolving Loan Documents), shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Estates may have (but subject to the Intercreditor Agreement and certain claims entitled to priority, including the Revolving Loan Permitted Liens and Claims (as defined below), as and to the extent expressly provided in Sections 2.1.3 and 4.1.1 below), in and upon all of the Pre-Petition Revolving Loan Collateral and the Post-Petition Revolving Collateral (as defined in the Credit Agreement and referred to herein as the "***Post-Petition Revolving Collateral***"), including, for the avoidance of doubt, any lien on property and/or proceeds recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code (the "***Avoidance Actions***") shall be shared (x) on a pari passu basis with the DIP Note Agent and DIP Note Purchasers with respect to the amounts owed under the New Money Facility and (y) on a junior basis to the claims described in clause

(x) with respect to the amounts owed under the Roll Up Facility. The Pre-Petition Revolving Loan Collateral and the Post-Petition Revolving Collateral are collectively referred to herein as the "*Revolving Loan Collateral.*" In accordance with Sections 552(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Revolving Loan Collateral, in excess of the amount of Post-Petition Revolving Obligations secured by the Revolving Loan Collateral after satisfaction of the Post-Petition Revolving Obligations of the Debtors to Revolving Agent and Revolving Lenders, shall constitute additional security for the repayment of the Pre-Petition Revolving Obligations and adequate protection for the use by Debtors, and the diminution in the value, of the Revolving Loan Collateral existing on the Petition Date.

2.1.2 *Term DIP Loans- Post Petition Granting.* To secure the prompt payment and performance of any and all Term DIP Obligations of Debtors to the DIP Note Agent and DIP Note Purchasers of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, DIP Note Agent, for the benefit of itself and the other DIP Note Purchasers, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Estates may have (but subject to the Intercreditor Agreement and certain claims entitled to priority, including the Term Loan Permitted Liens and Claims (as defined below), as and to the extent expressly provided in Section 2.1.4 and 4.1.2 below), in and upon all of the Term Loan Collateral (as defined in the DIP Note Purchase Agreement and referred to herein as the "*Term Loan Collateral*" and, together with the Post-Petition Revolving Collateral, the "*Collateral*"), including, for the avoidance of doubt, any lien on property and/or proceeds recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to the Avoidance Actions and shall be shared (x) with respect to the amounts owed under the New Money Facility on a pari passu basis with the Revolving Agent and the Revolving

Lenders with respect to the Post-Petition Revolving Obligations and (y) on a junior basis to the claims described in clause (x) with respect to the amounts owed under the Roll Up Facility.

      2.1.3  *Revolving Loan Lien Priority.*  The liens and security interests of Revolving Agent and Revolving Lenders granted under the Revolving Loan Documents and this Final Financing Order in the Revolving Loan Collateral shall be and shall continue to be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; provided, however that Revolving Agent's and Revolving Lenders' liens on and security interests in the Revolving Loan Collateral shall be subject only to (i) the Intercreditor Agreement, (ii) the Revolving Loan Permitted Encumbrances to the extent such Revolving Loan Permitted Encumbrances are senior to, and have not been or are subject to being subordinated to, Revolving Loan Agent's liens on and security interests in the Revolving Loan Collateral or otherwise avoided, and only for so long as and to the extent that such Revolving Loan Permitted Encumbrances are and remain senior and outstanding and (iii) the Carve Out Expenses (as defined below) solely to the extent provided for in Sections 2.3 and 2.4 of this Final Financing Order (the foregoing clauses (ii) and (iii) are collectively referred to herein as the *"Revolving Loan Permitted Liens and Claims"*).

      2.1.4  *Term DIP Loan Lien Priority.*  The liens and security interests of the DIP Note Agent and DIP Note Purchasers granted under the Term Loan Documents and this Final Financing Order in the Term Loan Collateral shall be and shall continue to be, pursuant to Section 364(d) of the Bankruptcy Code, first and senior in priority to all other interests and liens of every kind, nature and description, including without limitation, to the pre-petition liens and security interest held by the Pre-Petition Term Agents, on behalf of themselves and the Pre-

Petition Term Secured Parties, in the Pre-Petition Term Loan Collateral, and whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; provided, however, that the DIP Note Agent's and DIP Note Purchasers' liens on and security interests in the Term Loan Collateral shall be subject only to (i) the Intercreditor Agreement, (ii) the Term Loan Permitted Encumbrances to the extent such Term Loan Permitted Encumbrances are senior to, and have not been or are subject to being subordinated to, Pre-Petition Term Loan Agent's liens on and security interests in the Term Loan Collateral or otherwise avoided, and only for so long as and to the extent that such Term Loan Permitted Encumbrances are and remain senior and outstanding and (iii) the Carve Out Expenses solely to the extent provided for in Sections 2.3 and 2.4 of this Interim Order (the foregoing clauses (ii) and (iii) are collectively referred to herein as the "*Term Loan Permitted Liens and Claims*" and, together with the Revolving Loan Permitted Liens and Claims, the "*DIP Loan Permitted Liens and Claims*"). Any amounts distributed on account of the Term Loan Permitted Liens and Claims from the proceeds of any sale of the Debtors' assets or any deposit related to such sale ("*Sale Proceeds*") shall be applied first to the amounts owed under the New Money Facility before being applied to the amounts owed under the Roll Up Facility.

        2.1.5    *Post-Petition Lien Perfection.* This Final Financing Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Revolving Loan Collateral or Term Loan Collateral, or other act to validate or perfect such security interest or lien, including without

01:14694868.6

-34-

limitation, with respect to any blocked, lockbox or depository account consisting of Revolving Loan Collateral or Term Loan Collateral (a "*Perfection Act*"). Notwithstanding the foregoing, if either Revolving Agent or DIP Note Agent shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, such Agent is authorized to perform such act, and the Debtors are authorized to perform such act to the extent necessary or required by such Agent, which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. Either Revolving Agent or DIP Note Agent may choose to file, record or present a certified copy of this Final Financing Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Final Financing Order in accordance with applicable law. Should either Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Final Financing Order.

2.1.6 *Nullifying Pre-Petition Restrictions to Post-Petition Financing.* Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the Revolving Loan Documents or the Term Loan Documents, any provision that restricts, limits or impairs in any way any Debtor from granting either Revolving Agent or DIP Note Agent security interests in or liens upon any of the Debtor's assets or properties (including, among other things, any anti-lien granting or anti-assignment

clauses in any leases or other contractual arrangements to which any Debtor is a party) under this Final Financing Order, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or the Revolving Loan Documents or the Term Loan Documents, shall not (i) be effective and/or enforceable against any such Debtor(s), Revolving Agent, Revolving Lenders and Bank Product Providers, DIP Note Agent or DIP Note Purchasers, as applicable, or (ii) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to (A) Revolving Agent, Revolving Lenders and Bank Product Providers pursuant to this Final Financing Order or the Revolving Loan Documents, or (B) DIP Note Agent and DIP Note Purchasers pursuant to this Final Financing Order or the Term Loan Documents, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law. Notwithstanding anything to the contrary herein, nothing in this Final Financing Order shall affect, impair or otherwise prejudice any rights that the Debtors' landlords may have or have the effect of encumbering, pledging or collateralizing the leasehold interests of the Debtors with respect to premises owned by such landlord to the extent otherwise prohibited under the terms of the applicable lease with such landlord.

2.2 *Superpriority Administrative Expense.*

2.2.1 *Revolving Loans.* For all Post-Petition Revolving Obligations (including, without limitation, the Pre-Petition Revolving Obligations rolled into the Post-Petition Revolving Obligations in accordance with the terms hereof) now existing or hereafter arising pursuant to the Interim Order, this Final Financing Order, the Revolving Loan Documents or otherwise, Revolving Agent, for the benefit of itself and the other Revolving Secured Parties (each in their respective capacities under the Revolving Loan Documents), is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations,

liabilities and indebtedness of the Debtors, whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof (the "***Revolving Loan Superpriority Claim***"), provided, however, the Revolving Loan Superpriority Claim shall be shared pari passu with the Term Loan Superpriority Claim (as hereinafter defined) subject only to (i) the Intercreditor Agreement, (ii) the Carve-Out, and (iii) the Revolving Loan Permitted Liens and Claims as and to the extent expressly set forth in this Final Financing Order. For the avoidance of doubt, as adequate protection, the Debtors are authorized and directed to pay the Revolving Lender Group Professional Fees.

2.2.2   *Term DIP Loans.*   For all Term DIP Obligations now existing or hereafter arising pursuant to the Interim Order, this Final Financing Order, the Term Loan Documents or otherwise, the DIP Note Agent, for the benefit of itself and the DIP Note Secured Parties (in their capacities under the Term Loan Documents), is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors, whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority

administrative claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof (the "*Term Loan Superpriority Claim*"); provided, however, that (x) the Term Loan Superpriority Claim comprised of the New Money Facility (the "*New Money Term Loan Superpriority Claim*") shall be shared on a pari passu basis with the Revolving Loan Superpriority Claim and (y) the Term Loan Superpriority Claim comprised of the Roll Up Facility (the "*Roll Up Term Loan Superpriority Claim*") shall be junior in priority to the New Money Term Loan Superpriority Claim and the Revolving Loan Superpriority Claim; provided, further, that each of the New Money Term Loan Superpriority Claim and the Roll Up Term Loan Superpriority Claim shall be subject to (i) the Intercreditor Agreement, (ii) the Carve-Out, and (ii) the Term Loan Permitted Liens and Claims as and to the extent expressly set forth in this Final Financing Order. For the avoidance of doubt, as adequate protection, the Debtors are authorized and directed to pay the DIP Note Professional Fees. Additionally, notwithstanding anything in this Final Financing Order to the contrary, as adequate protection, the Debtors are authorized to pay the Pre-Petition Term Secured Parties (other than the DIP Note Purchasers) up to $50,000 for their reasonable attorneys' fees and legal expenses incurred from the date of entry of this Final Financing Order (the "*Term Lender Professional Fees*"); provided, that (a) the Debtors, the U.S. Trustee, and the Committee shall have ten (10) days from receipt to review the legal invoices the Pre-Petition Term Secured Parties (other than the DIP Note Purchasers) for reasonableness and (b) in the event the Debtors, the U.S. Trustee or Committee shall file with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, the portion of such legal invoice subject to such objection shall not be paid until resolution of such objection by this Court and (c) in the event none of the Debtors, the U.S. Trustee or the Committee shall file with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, such legal invoice shall not be subject to any further review or

01:14694868.6

challenge; provided, further, that it is expressly agreed that the Revolving Agent and Revolving Lenders are not obligated to make Advances to Debtors or to otherwise fund the Term Lender Professional Fees.

2.3    *Carve Out Expenses.*

2.3.1    *Carve Out Expenses.*    Upon (a) the declaration by the Revolving Agent of the occurrence of an Event of Default (as defined in the Credit Agreement) or (b) the declaration by the DIP Note Agent of the occurrence of an Event of Default (as defined in the DIP Term Sheet), each of (i) the Revolving Agent's and Revolving Secured Parties' (each in their respective capacities under the Revolving Loan Documents) liens, claims and security interests in the Revolving Loan Collateral and their Revolving Loan Superpriority Claim, and (ii) the DIP Note Agent's and DIP Note Purchasers' (each in their respective capacities under the Term Loan Documents) liens, claims and security interests in the Term Loan Collateral and their Term Loan Superpriority Claim, shall each be subject only to the Intercreditor Agreement and the Revolving Loan Permitted Liens and Claims and the Term Loan Permitted Liens and Claims, as applicable, which include the right of payment of the following expenses (the "*Carve Out Expenses*"):

a.    statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

b.    fees payable to the Clerk of this Court;

c.    subject to the terms and conditions of this Final Financing Order, Allowed Professional Fees (as defined below) incurred during the period commencing on the Petition Date and ending on the Trigger Date (as defined below) (the "*Pre-Trigger Date Period*") by attorneys, accountants and other professionals retained by the Debtors and any Committee(s) under Section 327 or 1103(a) of the Bankruptcy Code

(collectively, the "*Professionals*"), provided that the aggregate amount of such Allowed Professional Fees included in the Carve Out Expenses pursuant to this clause (c) shall not exceed on a weekly basis (i) the aggregate amount set forth in the line item in the Budget "*Professional Fee Reserve*",  plus (ii) the amount set forth on a Certificate delivered by Debtors' CEO, CFO or such other persons with authority (an "*Authorized Officer*") to Revolving Agent by 3:00 PM on each Monday (except that the deadline for delivering such Certificate shall be January 21, 2014, with respect to the week ending January 18, 2014, and February 18, 2014, with respect to the week ending February 15, 2014) by which the actual amount of Professional Fees incurred by the Professionals during the prior week exceeded the amount set forth on the Budget,  covering the Pre-Trigger Date Period, less the sum of all Allowed Professional Fees incurred during the Pre-Trigger Date Period paid at any time (the "*Pre-Trigger Date Professional Fee Carve Out*"); and

      d.    subject to the terms and conditions of this Final Financing Order, Allowed Professional Fees incurred by Professionals on or after the Trigger Date in an aggregate amount not to exceed $175,000.00 (the "*Post-Trigger Date Professional Fee Carve Out*", and together with the Pre-Trigger Date Professional Fee Carve Out, collectively, the "*Carve Out*").

      2.3.2   For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein.  For purposes of this Final Financing Order, (i) the term "*Allowed Professional Fees*" shall mean the unpaid and outstanding reasonable fees and expenses of Professionals (A) actually incurred on or after the Petition Date and (B) allowed at any time by a final order of the Court pursuant to Sections 326, 328, 330 or 331 of the Bankruptcy Code (but excluding any transaction, restructuring, completion, success or similar fees); and (ii) the term "*Trigger Date*"

shall mean the date upon which either the Revolving Agent or the DIP Note Agent provides written notice to the Debtors of the occurrence of an Event of Default under the Revolving Loan Documents or the Term Loan Documents, as applicable. In the event that the Trigger Date occurs prior to the end of any week set forth in the Budget, then for purposes of calculating the portion of the Pre-Trigger Date Professional Fee Carve Out available for such week, the amount of the "*Professional Fee Reserve*" line item in the Budget for such week shall be multiplied by a fraction, the numerator of which shall be the number of days in such week prior to the Trigger Date, and the denominator of which shall be 7. For purposes of the Carve Out, the monthly retainer payable to Lincoln Partners Advisors LLC ("*Lincoln*"), one of the Professionals retained by Debtors, shall be part of the Professional Fees included within the Carve Out. The "Sale Transaction Fee" payable to Lincoln upon consummation of the Sale (as defined in the DIP Term Sheet) pursuant to that certain engagement letter dated October 10, 2013 shall be deemed an expense payable from the first gross proceeds of the Sale (as defined in the DIP Term Sheet).

2.3.3  *Excluded Professional Fees.*  Notwithstanding anything to the contrary in the Interim Order and this Final Financing Order, neither the Carve Out nor the proceeds of any Advances, Letters of Credit, Bank Products, Term DIP Loans, Revolving Loan Collateral or Term Loan Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in (but excluding any investigation into) any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Pre-Petition Revolving Obligations or the Pre-Petition Term Obligations or the Revolving Agent's, Revolving Lenders', Pre-Petition Term Secured Parties', Bank Product Providers', DIP Note Agent's, or DIP Note Purchasers' liens on and security

01:14694868.6

-41-

interests in the Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, either the Revolving Loan Obligations or Revolving Agent's, and Revolving Secured Parties' liens on and security interests in the Revolving Loan Collateral, or the Term Loan Obligations or DIP Note Agent's or DIP Note Purchasers' liens on and security interests in the Term Loan Collateral or (iii) preventing Revolving Agent's, any Revolving Secured Parties' or DIP Note Agent's or DIP Note Purchasers' assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of this Final Financing Order; provided, however, not more than $75,000 in the aggregate of the Carve Out or the proceeds of any Advances, Letters of Credit, Bank Products, Term Loans, Revolving Loan Collateral, Term Loan Collateral, Pre-Petition Revolving Loan Collateral, or Pre-Petition Term Loan Collateral may be used to pay the Allowed Professional Fees of Professionals retained by the Committee incurred in connection with investigating the matters set forth in this Section 2.3.2(a)(i), 2.3.2(a)(ii) and 2.3.2(a)(iii); (b) a request to use Cash Collateral without the prior written consent of Revolving Agent and DIP Note Agent in accordance with the terms and conditions of this Final Financing Order; (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Section 364(c) or Section 364(d) of the Bankruptcy Code, other than from Revolving Agent or Revolving Lenders, without the prior written consent of Revolving Agent with respect to the Revolving Loan Collateral, other than from DIP Note Agent or DIP Note Purchasers, without the prior written consent of DIP Note Agent with respect to the Term Loan Collateral; (d) the commencement or prosecution of any Avoidance Actions against the Revolving Agent, any Revolving Lender, the Bank Product Provider, the DIP Note Agent, any DIP Note Purchaser, the Pre-Petition Roll-Over Credit Agent, the Pre-Petition Shareholder Credit Agent, or any Pre-Petition Term Secured Party or any of their respective officers, directors, managers, employees,

01:14694868.6

-42-

agents, attorneys, funds, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the Revolving Agent, any Revolving Lender, the Bank Product Provider, the DIP Note Agent, any DIP Note Purchaser, the Pre-Petition Roll-Over Credit Agent, the Pre-Petition Shareholder Credit Agent, or any Pre-Petition Term Secured Party; or (c) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Revolving Agent, any Revolving Lender or any Bank Product Provider, DIP Note Agent and any DIP Note Purchaser or which is contrary, in a manner that is material and adverse to the Revolving Agent, any Revolving Lender or any Bank Product Provider, DIP Note Agent and any DIP Note Purchaser to any term or condition set forth in or acknowledged by the Revolving Loan Documents, the Term Loan Documents or this Final Financing Order.

     2.3.4  *Carve Out Reserve.*  At Revolving Agent's discretion, Revolving Agent may at any time establish a reserve (as defined in the Credit Agreement) against the amount of Advances, Letters of Credit or other credit accommodations that would otherwise be made available to Debtors pursuant to the lending formulae contained in the Credit Agreement in respect of the Carve Out and the other Carve Out Expenses; provided, that, with respect to the Pre-Trigger Date Professional Fee Carve Out and without limiting any other Reserves, Revolving Agent may implement in accordance with the terms of the Credit Agreement, Revolving Agent was authorized and has established, pursuant to the terms of the Interim Order, and is further authorized pursuant to the terms of this Final Financing Order to establish a reserve (the "*Reserve*") upon entry of this Final Financing Order in an amount equal to (a) the Post-Trigger Date Professional Fee Carve-Out, plus (b) one hundred (100%) percent of the total amount reflected in the Budget line item labeled "Professional Fee Reserve" for the week ending December 29, 2013, plus (c) on the Friday of that week and the Friday of each week thereafter,

01:14694868.6

-43-

an amount equal to one hundred (100%) percent of the amount reflected in the Budget line item labeled "Professional Fee Reserve" for the following week, plus (d) upon Revolving Agent's receipt of written notice by Debtors and certified by an Authorized Officer, which must be delivered by 3:00 PM on the Monday of each week, the amount by which the actual accrued Professional Fees for the prior week exceeded the amount budgeted for such week. Any failure by the Authorized Officer to submit by 3:00 PM on each Monday (or such other applicable date as set forth in section 2.3.1.c above) the amount by which its actual fees for the prior week exceeded the Budget will result in the exclusion of such actual amount from the Carve Out. Upon Revolving Agent's receipt of written notice by the Debtors and certified by an Authorized Officer reflecting the payment of Allowed Professional Fees during the Pre-Trigger Date Period (a "*Professional Fee Payment Notice*"), (x) the amount of the Pre-Trigger Date Professional Fee Carve Out shall be permanently and irrevocably reduced by the amount of Allowed Professional Fees paid as set forth in the Professional Fee Payment Notice on a dollar-for-dollar basis, and (y) Revolving Agent shall reduce the Reserve on a dollar-for-dollar basis in the amount equal to such reported payment set forth in the Professional Fee Payment Notice. Notwithstanding the foregoing, the delivery of a Professional Fee Payment Notice shall not be required to reduce the amount of Allowed Professional Fees permitted to be included in the Pre-Trigger Date Professional Fee Carve Out in accordance with the terms of this Final Financing Order to the extent such Allowed Professional Fees are actually paid.

2.4     *Payment of Carve Out Expenses.*

2.4.1. Prior to the declaration by the Revolving Agent or the DIP Note Agent of an occurrence of an Event of Default under either the Revolving Loan Documents or the Term Loan Documents, as applicable, the Debtors shall be permitted to pay Allowed Professional Fees of the Professionals in amount not to exceed the amount reserved for such

01:14694868.6

-44-

period in the applicable Pre-Trigger Date Professional Fee Carve Out. Any such amounts paid prior to the occurrence of any Event of Default shall permanently reduce the Pre-Trigger Date Professional Fee Carve Out and the Reserve on a dollar-for-dollar basis as set forth in Section 2.3.3, but shall not reduce the Post-Trigger Date Professional Fee Carve Out.

   2.4.2. Following the occurrence of a Trigger Date, Allowed Professional Fees shall be paid first from the proceeds held in the Reserve. Any payment or reimbursement made either directly by Revolving Agent or any Revolving Lender or by DIP Note Agent or any DIP Note Purchaser at any time, or by or on behalf of the Debtors on or after the declaration by either Agent of the occurrence of an Event of Default under either the Revolving Loan Documents or the Term Loan Documents (a) in respect of any Allowed Professional Fees incurred by Professionals prior to the Trigger Date, shall permanently reduce the Pre-Trigger Date Professional Fee Carve Out on a dollar-for-dollar basis, (b) in respect of any Allowed Professional Fees incurred by Professionals on or after the Trigger Date, shall permanently reduce the Post-Trigger Date Professional Fee Carve Out on a dollar-for-dollar basis, and (c) in respect of any other Carve Out Expenses shall permanently reduce the Professional Fee Carve Out on a dollar-for-dollar basis. Revolving Agent's and Revolving Lenders' obligation to fund or otherwise pay the Professional Fee Carve Out and the other Carve Out Expenses shall be added to and made a part of the Post-Petition Revolving Obligations, secured by the Revolving Loan Collateral, and entitle Revolving Agent and Revolving Lenders (each in their respective capacities under the Revolving Loan Documents) to all of the rights, claims, liens, priorities and protections under this Final Financing Order, the Revolving Loan Documents, the Bankruptcy Code or applicable law. In the event the DIP Note Agent or any DIP Note Purchaser funds or otherwise pays the Professional Fee Carve Out or the other Carve Out Expenses, such amounts shall be added to and made a part of the Term DIP Obligations, secured by the Term Loan

01:14694868.6

Collateral, and entitle the DIP Note Agent and DIP Note Purchasers to all of the rights, claims, liens, priorities and protections under this Final Financing Order, the Term Loan Documents, the Bankruptcy Code or applicable law. Payment of any Carve Out Expenses, whether by or on behalf of either Agent or any Revolving Lender or DIP Note Purchaser, shall not and shall not be deemed to reduce the Revolving Loan Obligations or the Term DIP Obligations, and shall not and shall not be deemed to subordinate any of Revolving Agent's, Revolving Lenders', DIP Note Agent's or DIP Note Purchasers' liens and security interests in the Revolving Loan Collateral, the Term Loan Collateral, the Revolving Loan Superpriority Claim or the Term Loan Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party. Except and solely to the extent set forth in Section 2.3 of this Final Financing Order, none of Revolving Agent, Revolving Lenders, DIP Note Agent, DIP Note Purchasers, Pre-Petition Term Loan Agents or the Pre-Petition Term Loan Secured Parties shall, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Cases under any chapter of the Bankruptcy Code, and nothing in Sections 2.3 or 2.4 of this Final Financing Order shall be construed to obligate any such party in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

2.4.3. Contemporaneous with the closing on the sale of substantially all of the Debtors' U.S. assets, a professional fee escrow (the "*Fee Escrow*") shall be funded in an amount equal to the remaining sum of the Pre-Trigger Date Professional Fee Carve Out and the Post-Trigger Date Professional Fee Carve Out, which has been reserved by the Revolving Agent, from the post-petition debtor-in-possession credit facilities authorized hereunder; provided that upon funding the Fee Escrow, the Revolving Agent, the Revolving Lenders, the DIP Note Agent,

and the DIP Note Purchasers are each fully released from any and all obligations to fund a Professional Fee Carve Out or to pay or otherwise fund any Carve Out Expenses.

2.5     *Use of Cash Collateral; Adequate Protection.*

2.5.1    *Authorization to Use Cash Collateral.*   Subject to the terms and conditions of this Final Financing Order, the Credit Agreement and the other Revolving Loan Documents, the DIP Term Sheet and the other Term Loan Documents, and in accordance with the Budget, the Debtors shall be and are hereby authorized to use, until the earlier of (a) the occurrence of an Event of Default (as defined herein) or (b) the expiration of Revolving Agent's and Revolving Lenders' commitment to lend under the Credit Agreement and the other Revolving Loan Documents, the Cash Collateral subject to the respective pre-petition liens and security interests granted to each of the Revolving Agent, Revolving Lenders, Bank Product Providers (each in their respective capacities under the Existing Loan Documents), Pre-Petition Term Loan Agents, and Pre-Petition Term Loan Lenders. Nothing in this Final Financing Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or the Debtors' use of Cash Collateral or other proceeds resulting therefrom, except as otherwise expressly permitted in this Final Financing Order, the Credit Agreement, the other Revolving Loan Documents, the DIP Term Sheet, the other Term Loan Documents and in accordance with the Budget.

2.5.2    *Replacement Liens.*   As adequate protection for the diminution in value of their respective interests in the Pre-Petition Collateral, each of the Revolving Agent, for the benefit of itself, the Revolving Lenders and the Bank Product Providers, the DIP Note Agent, for itself and the DIP Note Purchasers, and the Pre-Petition Term Loan Agents, for the benefit of itself and the Pre-Petition Term Loan Lenders, is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, (a) valid, binding, enforceable and perfected replacement liens

01:14694868.6

-47-

upon and security interests in all Collateral (the "***Replacement Liens***"), subject to this Order, the Intercreditor Agreement, the Term Loan Intercreditor Agreement, the Revolving Loan Documents, the Term Loan Documents and the Pre-Petition Term Loan Documents and in accordance with the following relative priorities:

| Relative Priorities | Post-Petition Revolving Collateral | Term Loan Collateral | Sale Proceeds or Sale Deposit |
|---|---|---|---|
| (1) | Revolving Agent (Post-Petition Revolving Obligations) | DIP Note Agent (DIP Term Obligations) | Pro rata to the Revolving Agent (Post-Petition Revolving Obligations) and the DIP Note Agent (New Money Facility) |
| (2) | Revolving Agent (Pre-Petition Revolving Obligations) | Pre-Petition Roll-Over Agent (Pre-Petition Roll-Over Obligations) | Revolving Agent (Pre-Petition Revolving Obligations) |
| (3) | DIP Note Agent (DIP Term Obligations) | Pre-Petition Shareholder Agent (Pre-Petition Shareholder Obligations) | DIP Note Agent (Roll Up Facility) |
| (4) | Pre-Petition Roll-Over Agent (Pre-Petition Roll-Over Obligations) | Revolving Agent (Post-Petition Revolving Obligations) | Then in accordance with the relative priorities for Post-Petition Revolving Collateral and Term Loan Collateral as set forth in this Section 2.5.2 |
| (5) | Pre-Petition Shareholder Agent (Pre-Petition Shareholder Obligations) | Revolving Agent (Pre-Petition Revolving Obligations) | |

2.5.3   *Section 507(b) Priority Claims.*

1)      As adequate protection for the diminution in value of their interests in the Pre-Petition Revolving Loan Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Revolving Loan Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out, the Revolving Agent,

for the benefit of itself and Revolving Loan Secured Parties (each in their respective capacities under the Pre-Petition Revolving Loan Documents), is hereby granted, as and to the extent provided by Section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "*Revolving Loan Adequate Protection Superpriority Claim*").  The Revolving Loan Adequate Protection Superpriority Claim shall be (i) subject to the Intercreditor Agreement, and (ii) junior only to (A) the Carve-Out, (B) the Revolving Loan Superpriority Claim and (C) the Term Loan Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever.

2)    As adequate protection for the diminution in value of their interests in the Pre-Petition Term Loan Collateral (including Cash Collateral) on account of the Debtors' use of such Term Loan Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out, the Pre-Petition Term Loan Agents, for the benefit of themselves and the Pre-Petition Term Loan Secured Parties, are hereby granted as and to the extent provided by Section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "*Term Loan Adequate Protection Superpriority Claim*").  The Term Loan Adequate Protection Superpriority Claim shall be (i) subject to the Intercreditor Agreement, and (ii) junior only to (A) the Carve-Out, (B) the Term Loan Superpriority Claim and (C) the Revolving Loan Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever.

### 2.5.4   *Rights Granted in Favor of Unsecured Creditors*

a.      In the event of a closing of the sale of the Debtors' assets located in the United States to a third party purchaser in accordance with the terms of the Bid Procedures Order entered by this Court and the repayment and satisfaction in full of the Post-Petition Revolving Loan Obligations owed to Revolving Agent, Revolving Lenders and Bank Product Providers and the DIP Term Obligations owed to the DIP Note Agent and the DIP Note Purchasers:

(i)   The sum of $375,000 (the "Wind Down Funds") from the net sale proceeds payable to the Pre-Petition Term Loan Agents, for the benefit of themselves and the Pre-Petition Term Secured Parties, shall be set aside to fund the post-closing wind-down of the Debtors, as directed by the Committee; provided that (a) such proceeds cannot be used in a manner prohibited by Section 2.3.3 hereof and (b) for the avoidance of doubt and notwithstanding anything to the contrary in this Final Financing Order and the Interim Financing Order, no portion of the Wind Down Funds shall be used to bring, directly or indirectly, any claim, suit, or other litigation or challenge whatsoever against the Pre-Petition Term Loan Agents, the Pre-Petition Term Secured Parties, the DIP Note Agent, the DIP Note Purchasers, the Revolving Agent, Revolving Lenders and Bank Product Providers and each of their respective successors and assigns, and their present and former shareholders, affiliates, managers, subsidiaries, divisions, funds, predecessors, directors, officers, attorneys, employees, participants, agents and other representatives, which arises out of, arises in connection with, or relates to the pre-petition and post-petition financing arrangements by and among the Debtors and each of the Pre-Petition Term Loan Agents, the Pre-Petition Term Secured Parties, the DIP Note Agent, the DIP Note Purchasers, the Revolving Agent, Revolving Lenders and Bank Product Providers

01:14694868.6

-50-

(ii)    The Replacement Lien granted hereunder in favor of the Pre-Petition Term Loan Agents, for the benefit of themselves and the Pre-Petition Secured Parties, shall not attach to the proceeds of the Avoidance Recoveries or Commercial Tort Claims, which for the avoidance of doubt includes all claims against former and current insiders, employees and shareholders of the Debtors, and any insurance policy responsive to such claims (and the proceeds thereof) and any claims of the Debtors and their estates against the Debtors' pre-petition secured lenders, provided that (A) the Term Loan Adequate Protection Superpriority Claims, if any, in favor of Pre-Petition Term Loan Agents, for the benefit of themselves and the Pre-Petition Term Secured Parties, shall continue to attach to such proceeds and (B) in the event the Revolving Agent and Revolving Lenders have not been fully released at the time of the closing of such sale, all of the rights and benefits granted in favor of Revolving Agent, Revolving Lenders and Bank Product Providers in accordance with the terms of the Credit Agreement, the Revolving Loan Documents and this Final Financing Order, including without limitation, the right to establish reserves, are expressly preserved, provided however, such reserve shall not be established from the Wind Down Funds; and

(iii)    The Stated Maturity Date set forth in the Credit Agreement and the Maturity Date set forth in the Term Loan DIP Amendment shall be extended by one (1) week, if necessary, in order to accommodate the dates set forth in the Debtors' Bid Procedures for the sale of the Debtors' US assets; and

b.    The Committee shall be granted, pursuant to Bankruptcy Code sections 105, 1103 and 1109, (i) immediate, exclusive leave, standing and authority without interference from the Debtors to investigate, conduct examinations in accordance with Rule 2004, prosecute and compromise the claims and causes of action identified in Section 2.5.4(a)(ii) above, as the true party-in-interest on behalf of the Debtors' estates; and (ii) the power to make

01:14694868.6

claims on behalf of or in the right of the estate against any insured person covered by any applicable director and officer insurance policy, including but not limited to, (a) making written demand(s) for monetary, non-monetary, or injunctive relief against any insured person, and/or (b) initiating civil or arbitration proceedings for monetary, non-monetary, or injunctive relief by service of complaint(s) or similar pleading(s), and (c) noticing such claim(s) to insurers, as required by any applicable director and officer insurance policy (provided, however, in the case of clauses (i) and (ii) of this subparagraph, such standing shall not be granted with respect to claims and causes of action against Revolving Agent, Revolving Lenders, Bank Product Providers, the Pre-Petition Term Loan Agents and the Pre-Petition Term Loan Secured Parties without further order of this Court). To facilitate the relief contained in this paragraph, the Committee shall be afforded the right to conduct examinations under oath and compel production of documents from any person or entity as provided in Bankruptcy Rules 2004, 7026-37, and 9016 and to receive, review and utilize any information, documents or materials that might be subject to any immunity or privilege asserted by the Debtors.

Section 3.    *Default; Rights and Remedies; Relief from Stay.*

  3.1 *Events of Default.*  In addition to the Events of Default listed in Section 4.2, the occurrence of any of the following events shall constitute an *"Event of Default"* under this Final Financing Order:

    a. Any Debtors' failure to perform, in any respect, any of the terms, conditions or covenants, or their obligations, under this Final Financing Order; or

    b. An "Event of Default" under the Credit Agreement or any of the other Revolving Loan Documents; or

    c. An "Event of Default" under the DIP Note Agreement or any of the other Term Loan Documents.

  3.2 *Rights and Remedies Upon Event of Default.*  Upon the occurrence of and during the continuance of an Event of Default, (a) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Final Financing Order, the Credit Agreement and the other Revolving Loan Documents, and the DIP Note Agreement and the other Term Loan Documents and (b) the Revolving Agent (in its capacity under each of the Pre-Petition Revolving Loan Documents and the Revolving Loan Documents), the DIP Note Agent, and the Pre-Petition Term Loan Agents (collectively, the *"Agents"*) shall, subject in all respect to the terms and conditions of the Intercreditor Agreement, be entitled to take any act or exercise any right or remedy (subject to Section 3.5 below) as provided in this Final Financing Order or any of the Credit Agreement and the other Revolving Loan Documents, and the DIP Note Agreement and the other Term Loan Document, as applicable, including, without limitation, to the extent permitted by the terms and conditions of the Intercreditor Agreement, (x) with respect to the Revolving Agent (in its capacity as agent under the Revolving Loan Documents), declaring all Revolving Obligations immediately due and payable, accelerating the Revolving Obligations,

ceasing to extend Advances or provide or arrange for Letters of Credit (as defined in the Credit Agreement) on behalf of Debtors, setting off any Revolving Obligations with Revolving Loan Collateral or proceeds in Revolving Agent's possession, and enforcing any and all rights with respect to the Revolving Loan Collateral, and (y) with respect to the DIP Note Agent, declaring all Term DIP Obligations immediately due and payable, accelerating the Term DIP Obligations, ceasing additional Term DIP Loans, setting off any Term DIP Obligations with Term Loan Collateral or proceeds in DIP Note Agent's possession, and enforcing any and all rights with respect to the Term Loan Collateral. Each of the Revolving Agent, the Revolving Lenders, the DIP Note Agent and DIP Note Purchasers shall have no obligation to lend or advance any additional funds to or on behalf of the Debtors, or provide any other financial accommodations to Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3     *Expiration of Revolving Loan Commitment.*    Upon the expiration of Borrowers' authority to borrow and obtain other credit accommodations from Revolving Agent and Revolving Secured Parties pursuant to the terms of this Final Financing Order and the Revolving Loan Documents (except if such authority shall be extended with the prior written consent of Revolving Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by Revolving Agent or any Revolving Secured Party), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.5 of this Final Financing Order, subject to the Intercreditor Agreement, all of the Revolving Loan Obligations shall immediately become due and payable and Revolving Agent and Revolving Secured Parties (each in their respective capacities under the Revolving Loan Documents) shall be automatically and completely relieved from the effect

01:14694868.6

of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Revolving Loan Collateral or any other rights granted to Revolving Agent and Revolving Secured Parties pursuant to the terms and conditions of the Revolving Loan Documents or this Interim Order, and Revolving Agent, acting on behalf of itself and the other Revolving Secured Parties (each in their respective capacities under the Revolving Loan Documents), shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Final Financing Order, the Revolving Loan Documents or applicable law which Revolving Agent (in its capacity under the Revolving Loan Documents) may deem appropriate and to proceed against and realize upon the Revolving Loan Collateral or any other property of the Debtors' Estates.

3.4     *Maturity of Term DIP Loans.*  Upon the earlier to occur of (a) the Maturity Date (as defined in the DIP Note Agreement) (except if the Maturity Date shall be extended with the prior written consent of DIP Note Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by DIP Note Agent or any DIP Note Purchaser) or (b) the occurrence of an Event of Default set forth in Section 3.1 above, subject to the Intercreditor Agreement, all of the Term DIP Obligations shall immediately become due and payable and DIP Note Agent and DIP Note Purchasers shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Term Loan Collateral or any other rights granted to DIP Note Agent and DIP Note Purchasers pursuant to the terms and conditions of the Term Loan Documents or this Final Financing Order, and DIP Note Agent, acting on behalf of itself and the other DIP Note Purchasers, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Final Financing Order, the Term Loan Documents or applicable law which DIP Note Agent may deem appropriate and

to proceed against and realize upon the Term Loan Collateral or any other property of the Debtors' Estates.

    3.5    *Relief from Automatic Stay.*  The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit each Agent and each Revolving Secured Party or DIP Note Purchaser to perform any act authorized or permitted under or by virtue of this Final Financing Order, the Revolving Loan Documents, or the Term Loan Documents, as applicable, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Final Financing Order and pursuant to the terms of the DIP Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Revolving Loan Collateral or Term Loan Collateral, as applicable, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Revolving Loan Obligations or Term DIP Obligations, as applicable, including, without limitation, all interests, fees, costs and expenses permitted under the Revolving Loan Documents or the Term Loan Documents, as applicable, and apply such payments to the Revolving Loan Obligations pursuant to the Revolving Loan Documents and this Final Financing Order, or to the Term DIP Obligations pursuant to the Term Loan Documents and this Final Financing Order, as applicable, and (d) immediately upon the occurrence of an Event of Default, and subject to the terms and conditions of the Intercreditor Agreement, to take any action and exercise all rights and remedies provided to it by this Final Financing Order, the Revolving Loan Documents, the Term Loan Documents or applicable law other than those rights and remedies against the Revolving Loan Collateral or Term Loan Collateral as provided in the following sentence. In addition, and without limiting the foregoing, subject to the Intercreditor Agreement, upon the occurrence of an Event of Default

01:14694868.6

and after providing, with respect to, the Revolver Agent, three (3) business days, and with respect to the DIP Note Agent, six (6) business days (such period, as applicable, the "*Default Notice Period*") prior written notice (the "*Enforcement Notice*") to counsel for the Debtors, counsel for the Committee (if appointed), counsel for the other Agent, counsel for the Pre-Petition Roll-Over Note Purchase Agent, counsel for the Pre-Petition Shareholder Credit Agent, and the U.S. Trustee, each Agent, acting on behalf of itself and the Revolving Lenders or the DIP Note Purchasers, as applicable, shall be entitled to take any action and exercise all rights and remedies provided to it by this Final Financing Order, the Revolving Loan Documents, the Term Loan Documents or applicable law as such Agent may deem appropriate in its sole discretion to proceed against and realize upon the Revolving Loan Collateral or Term Loan Collateral, as applicable, or any other assets or properties of the Estates upon which such Agent, for the benefit of itself and the Revolving Secured Parties or the DIP Note Purchasers, as applicable, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Revolving Loan Obligations or Term DIP Obligations, as applicable. Notwithstanding anything to the contrary, any action taken by Revolving Loan Agent to (A) accelerate the Revolving Loans, (B) send blocking notices or activation notices to the Blocked Account Bank, (C) repay any amounts owing in respect of the Revolving Obligations (including, without limitation, fees, indemnities and expense reimbursements) and (D) cash collateralize Letters of Credit and/or Bank Products issued pursuant to the Revolving Loan Documents, in each case, shall not require any advance notice to the Debtors.

Section 4.     *Representations; Covenants; and Waivers.*

      4.1     *Objections to Pre-Petition Obligations.*

           4.1.1     *Objections    to    Pre-Petition    Revolving    Loan    Obligations.* Notwithstanding anything to the contrary in the Interim Order and this Final Financing Order,

01:14694868.6

-57-

any action, claim, defense, complaint, motion or other written opposition (hereinafter, an "*Objection*") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Revolving Obligations, (b) the extent, legality, validity, perfection or enforceability of Revolving Agent's and Revolving Lenders' pre-petition liens and security interests in the Pre-Petition Revolving Loan Collateral, or (c) the pay down of the Pre-Petition Revolving Loan Obligations or the roll into the Post-Petition Revolving Obligations of the Advances, Letters of Credit, Bank Products (each as defined in the Revolving Loan Documents) and other Pre-Petition Revolving Obligations as provided for in this Interim Order (provided however, that for purposes of this clause (c), any party asserting an Objection in accordance with this Section 4.1.1 shall not be permitted to assert, argue or allege as the sole grounds for such Objection that the pay-down or roll-up provided for in this Final Financing Order is *per se* impermissible or illegal) shall be properly filed with the Court (x) by any Committee, within sixty (60) calendar days from the Committee Appointment Date, or (y) by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of the Interim Order, provided that, in the event the Sale, as defined in the Ratification Agreement, occurs sooner, the deadlines set forth above shall be shortened to a date that is five (5) Business Days prior to the scheduled hearing to approve such Sale; provided, however, that nothing herein shall permit any party to challenge the extent or validity of the Post-Petition Revolving Obligations for any disbursements in excess of the Pre-Petition Revolving Obligations. If any such Objection is timely and properly filed and successfully pursued, nothing in the Interim Order and Final Financing Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Revolving Obligations or Revolving Agent's and Revolving Secured Parties' liens on the Pre-Petition Revolving Loan Collateral. If no Objection

is timely and properly filed, or if an Objection is timely and properly filed but denied, (a) the Pre-Petition Revolving Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Revolving Agent's and Revolving Secured Parties' pre-petition liens on and security interest in the Pre-Petition Revolving Loan Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Intercreditor Agreement and the Revolving Loan Permitted Liens and Claims, and (b) Revolving Agent, Revolving Secured Parties and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Revolving Loan Documents and shall not be subject to any further objection or challenge by any party at any time. Nothing contained in this Section 4.1.1 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Revolving Agent and Revolving Lenders in connection with the Post-Petition Revolving Obligations provided by Revolving Agent and Revolving Lenders to Debtors in reliance on Section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Final Financing Order and the Revolving Loan Documents. Notwithstanding anything to the contrary contained within this Final Financing Order, all stipulations, admissions, agreements, findings of fact and conclusions of law with respect to the Pre-Petition Revolving Obligations and the Pre-Petition Revolving Loan Collateral, as set forth herein, shall be subject in all respects to the terms of this paragraph 4.1.1.

4.1.2 *Objections to Pre-Petition Term Obligations.*  Notwithstanding anything to the contrary in the Interim Order and the Final Financing Order, any Objection that

01:14694868.6

-59-

seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Term Obligations, (b) the extent, legality, validity, perfection or enforceability of Pre-Petition Term Agents' and the Pre-Petition Term Loan Secured Parties' pre-petition liens and security interests in the Pre-Petition Term Loan Collateral or any payments made pursuant to this Final Financing Order, or (c) the roll into the Term DIP Obligations of certain of the Pre-Petition Term Obligations as provided for in this Final Financing Order and the DIP Note Agreement (provided however, that for purposes of this clause (c), any party asserting an Objection in accordance with this Section 4.1.2 shall not be permitted to assert, argue or allege as the sole grounds for such Objection that the roll-up provided for in this Final Financing Order is *per se* impermissible or illegal), shall be properly filed with the Court (x) by any Committee and within sixty (60) calendar days from the Committee Appointment Date, or (y) within the thirty (30) days following the Petition Date, by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of the Interim Order, provided that, in the event the Sale, as defined in the Ratification Agreement, occurs sooner, the deadlines set forth above shall be shortened to a date that is five (5) Business Days prior to the scheduled hearing to approve such Sale. If any such Objection is timely and properly filed and successfully pursued, nothing in the Interim Order or this Final Financing Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Term Obligations or Pre-Petition Term Loan Agents' and Pre-Petition Term Loan Secured Parties' liens on the Pre-Petition Term Loan Collateral. If no Objection is timely and properly filed, or if an Objection is timely and properly filed but denied, (a) the Pre-Petition Term Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or

challenge by any party at any time, and Pre-Petition Term Loan Agents' and Pre-Petition Term Loan Secured Parties' pre-petition liens on and security interest in the Pre-Petition Term Loan Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Intercreditor Agreement and the Term Loan Permitted Liens and Claims, and (b) Pre-Petition Term Agents, Pre-Petition Term Secured Parties and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Term Documents and shall not be subject to any further objection or challenge by any party at any time. Nothing contained in this Section 4.1.2 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to the DIP Note Agent and DIP Note Purchasers in connection with all Term DIP Loan Obligations provided by the DIP Note Agent and DIP Note Purchasers to Debtors in reliance on Section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Final Financing Order and the Term Loan Documents. Notwithstanding anything to the contrary contained within this Final Financing Order, all stipulations, admissions, agreements findings of fact and conclusions of law with respect to the Pre-Petition Term Obligations and the Pre-Petition Term Loan Collateral, as set forth herein, shall be subject in all respects to the terms of this paragraph 4.1.2.

        4.2    *Additional Defaults.*   At all times during the Cases, unless otherwise ordered by the Court, the following are an Event of Default: (i) obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code, other than as provided for in this Final Financing Order or as may be otherwise expressly permitted pursuant to the Revolving Loan Documents or the Term Loan Documents, (ii) challenge the application of any payments authorized by this Final Financing Order as

pursuant to Section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Revolving Loan Collateral is less than the Pre-Petition Revolving Obligations, (iii) propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Revolving Loan Obligations and Term DIP Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the Credit Agreement and the Term Note Purchase Agreement, respectively, or (iv) seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of any of Revolving Agent, DIP Note Agent, Revolving Secured Parties or DIP Note Purchasers as provided in this Final Financing Order and the Revolving Loan Documents or the Term Loan Documents or any of Revolving Agent, DIP Note Agent, Revolving Lenders or DIP Note Purchasers' exercise of such rights or remedies; provided, however, that the Revolving Agent or DIP Note Agent may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by any of Revolving Agent, DIP Note Agent, Revolving Secured Party or DIP Note Purchasers, and the consent of each of Revolving Agent and DIP Note Agent shall be required in order to relieve the Debtors' of their obligations under this Section 4.2.

    4.3    *Section 506(c) Claims.*

        4.3.1    No costs or expenses of administration which have or may be incurred in the Cases at any time shall be charged against or recovered from Revolving Agent or any Revolving Secured Parties, their respective claims or the Revolving Loan Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Revolving Agent, and no such consent shall be implied from any other action, inaction or acquiescence by Revolving Agent or any Revolving Secured Party.

4.3.2 No costs or expenses of administration which have or may be incurred in the Cases shall be charged against the DIP Note Agent or any DIP Note Purchaser, their respective claims or the Term Loan Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of such DIP Note Agent, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Note Agent or any DIP Note Purchaser.

4.4 *Collateral Rights.*

4.4.1 Until all of the Revolving Loan Obligations shall have been indefeasibly paid and satisfied in full:

1) except to the extent permitted by the terms of the Intercreditor Agreement, it shall be an Event of Default under the terms of this Final Financing Order if any other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Revolving Loan Collateral; and

2) upon and after the declaration of the occurrence of an Event of Default, and subject to the Revolving Agent's (in its capacity as agent under the Revolving Loan Documents) obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Revolving Loan Collateral, the Revolving Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtors, to, subject to the Intercreditor Agreement: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors, and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses. Revolving Agent and Revolving Lenders will be responsible for the payment of any applicable fees, rentals,

01:14694868.6

royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Revolving Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Revolving Loan Agent actually occupies or uses such assets or properties).

        4.4.2   Until all of the Term DIP Obligations shall have been indefeasibly paid and satisfied in full:

        1)     except to the extent permitted by the terms of the Intercreditor Agreement, it shall be an Event of Default under the terms of this Final Financing Order if any other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Term Loan Collateral; and

        2)     upon and after the occurrence of an Event of Default, and subject to the DIP Note Agent obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Term Loan Collateral, the DIP Note Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtors, to, subject to the Intercreditor Agreement: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors, and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses. DIP Note Agent and DIP Note Purchasers will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that DIP Note Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that DIP Note Agent actually occupies or uses such assets or properties).

4.5     *Releases.*

4.5.1     Upon the entry of this Final Financing Order, and subject to Section 4.1 above, in consideration of Revolving Agent and Revolving Lenders making Revolving Loans, advances and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the Revolving Loan Documents, the Interim Order, and this Final Financing Order, each Debtor, on behalf of itself and its successors and assigns (including any person or entity identified in Section 5.6.4 of this Final Financing Order), (collectively, the "***Releasors***"), shall, forever release, discharge and acquit Revolving Agent, each Revolving Lender, each Bank Product Provider and their respective successors and assigns, and their present and former shareholders, affiliates, managers, subsidiaries, divisions, funds, predecessors, directors, officers, attorneys, employees and other representatives (collectively, the "***Revolving Loan Releasees***") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Revolving Loan Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtors, the Pre-Petition Revolving Obligations, Pre-Petition Revolving Loan Documents, the Revolving Loan Documents and any Advances, Letters of Credit, Bank Products (each as defined in the Pre-Petition Revolving Loan Documents) or other financial accommodations made by Revolving Agent, Revolving Lenders and/or Bank Product Providers to Debtors pursuant to the Pre-Petition Revolving Loan Documents. In addition, upon the repayment of all Post-Petition Revolving Obligations (and, if not rolled up, all Pre-Petition Revolving Obligation) owed to Revolving Agent and Revolving Lenders by Debtors and termination of the rights and obligations arising under the Revolving Loan Documents, the

Interim Order, and the Final Financing Order (which payment and termination shall be on terms and conditions acceptable to Revolving Agent), Revolving Agent and Revolving Secured Parties shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Revolving Loan Documents, the Interim Order, and this Final Financing Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out Expenses and/or the Professional Fee Carve Out in accordance with Section 2.5 of this Interim Order or otherwise), on terms and conditions acceptable to Revolving Agent.

4.5.2   Upon the entry of this Final Financing Order, and, subject to Section 4.1 above, in consideration of the DIP Note Agent and DIP Note Purchasers making post-petition term loans, advances and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the Term Loan Documents, the Interim Order, and this Final Financing Order, each Releasor, shall, forever release, discharge and acquit DIP Note Agent, each Term DIP Note Purchaser, the Pre-Petition Term Loan Agents and the Pre-Petition Term Secured Parties  and their respective successors and assigns, and their present and former shareholders, affiliates, funds, subsidiaries, divisions, predecessors, directors, managers, officers, attorneys, employees and other representatives (collectively, the "*Term Loan Releasees*") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Term Loan Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtors, the Pre-Petition Term Loan Obligations, the Pre-Petition Term Documents, the Term Loan Documents and any loans

01:14694868.6

-66-

or other financial accommodations made by the Pre-Petition Term Loan Agents and Pre-Petition Term Loan Secured Parties to Debtors pursuant to the Pre-Petition Term Documents.   In addition, upon the repayment of all Term DIP Obligations owed to the DIP Note Agent and DIP Note Purchasers by Debtors and termination of the rights and obligations arising under the Term Loan Documents, the Interim Order, and this Final Financing Order (which payment and termination shall be on terms and conditions acceptable to DIP Note Agent), DIP Note Agent and DIP Note Purchasers shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Term Loan Documents, the Interim Order, or this Final Financing Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out Expenses in accordance with Section 2.3 of the Interim Order, Section 2.3 of this Final Financing Order or otherwise), on terms and conditions acceptable to DIP Note Agent.

Section 5.     *Other Rights and DIP Obligations.*

5.1     *No Modification or Stay of This Final Financing Order.*   Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Final Financing Order, the Revolving Loan Documents, the Term Loan Documents or any term hereunder or thereunder, or (ii) the dismissal or conversion of one or more of the Cases (each, a *"Subject Event"*), (x) the acts taken by each Agent and each Secured Party  in accordance with this Final Financing Order, and (y) the Post-Petition Revolving Obligations and Term DIP Obligations incurred or arising prior to each Agent's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Final Financing Order, and the acts taken by each Agent and each Secured Party in accordance with this Final Financing Order, and

the liens granted to each Agent and each Secured Party in the Revolving Loan Collateral or Term Loan Collateral, as applicable, and all other rights, remedies, privileges, and benefits in favor of each Agent and each Secured Party pursuant to the Interim Order, this Final Financing Order, and the Revolving Loan Documents and Term Loan Documents, as applicable, shall remain valid and in full force and effect pursuant to Section 364(e) of the Bankruptcy Code. For purposes of this Final Financing Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Final Financing Order by this Court or any other tribunal.

5.2 *Power to Waive Rights; Duties to Third Parties.*

5.2.1 Revolving Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in the Interim Order or this Final Financing Order in respect of Revolving Agent and Revolving Secured Parties (the "***Revolving Lender Rights***"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Revolving Lender Right(s). Any waiver by Revolving Agent of any Revolving Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any Revolving Lender Right shall neither constitute a waiver of such Revolving Lender Right, subject Revolving Agent or any Revolving Secured Party to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to Revolving Agent or any Revolving Secured Party.

5.2.2 DIP Note Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in the Interim Order or this Final Financing Order in respect of DIP Note Agent and DIP Note Purchaser (the "***Term Loan Lender Rights***"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or

01:14694868.6

-68-

failure to exercise or enforce, any Term Loan Lender Right(s). Any waiver by DIP Note Agent of any Term Loan Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any Term Loan Lender Right shall neither constitute a waiver of such Term Loan Lender Right, subject DIP Note Agent or any DIP Note Purchaser to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to DIP Note Agent or any DIP Note Purchaser.

      5.3     *Disposition of Collateral.*

      5.3.1   Subject to the terms and conditions of the Intercreditor Agreement, it shall be an Event of Default under the terms of this Final Financing Order if any Debtor shall sell, transfer, lease, encumber or otherwise dispose of any portion of the Revolving Loan Collateral without the prior written consent of Revolving Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by Revolving Agent or any Revolving Lender) and an order of this Court, except for sales of Debtors' Inventory in the ordinary course of their business. Debtors shall remit to Revolving Agent, or cause to be remitted to Revolving Agent, all proceeds of the Revolving Loan Collateral for application by Revolving Agent to the Revolving Loan Obligations, in such order and manner as Revolving Agent may determine in its discretion, in accordance with the terms of this Final Financing Order, the Credit Agreement, the other Revolving Loan Documents, and the Intercreditor Agreement.

      5.3.2   Subject to the terms and conditions of the Intercreditor Agreement, it shall be an Event of Default under the terms of this Final Financing Order if any Debtor shall sell, transfer, lease, encumber or otherwise dispose of any portion of the Term Loan Collateral without the prior written consent of the DIP Note Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Note Agent or any DIP Note

01:14694868.6

Purchaser) and an order of this Court, except for sales of Debtors' Inventory in the ordinary course of their business. Debtors shall remit to the DIP Note Agent, or cause to be remitted to the DIP Note Agent, all proceeds of the Term Loan Collateral for application by the DIP Note Agent to the Term DIP Obligations, in such order and manner as the DIP Note Agent may determine in its discretion, in accordance with the terms of this Final Financing Order, the DIP Note Agreement, the other Term Loan Documents, and the Intercreditor Agreement.

5.3.3   In the event that the Debtors' receive or are entitled to receive the proceeds of a deposit in connection with the termination of an agreement for the sale, transfer, lease, encumbrance or other disposition of the Debtors' assets (including, without limitation, the "Deposit" as such term is defined in that certain Asset Purchase Agreement Dated as of December 17, 2013 among Amcor Rigid Plastics USA, Inc. and certain of the Debtors), the Debtors shall immediately remit, or cause to be remitted, all of such deposit(s) (the "*Sale Deposit*") to the Revolving Agent and the DIP Note Agent on a pro rata basis (determined with respect to all Post-Petition Revolving Obligations and all obligations outstanding under the New Money Facility) for application, as applicable, to the Post-Petition Revolving Obligations and the obligations outstanding on account of the New Money Facility. For purposes of clarity, the application of the proceeds of any deposit as contemplated in this paragraph shall be shared on a pro rata basis by the Revolving Agent and the DIP Note Agent on account of new money that is loaned on a postpetition basis that constitute, as applicable, the Revolving Loan Obligations and the Term DIP Obligations.

5.3.4   Section 5.12 of the Ratification Agreement is hereby approved.

5.4   *Inventory.* Debtors shall not, without the consent of Revolving Agent, (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy

Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise.

5.5    *Reservation of Rights.* The terms, conditions and provisions of this Final Financing Order are in addition to and without prejudice to the rights of (i) the Agents, (ii) each Revolving Lender (in their respective capacities under each of the Pre-Petition Revolving Loan Documents and the Revolving Loan Documents), (iii) each DIP Note Purchaser, and (iv) each Pre-Petition Term Loan Secured Party to pursue any and all rights and remedies under the Bankruptcy Code, the Pre-Petition Revolving Loan Documents, the Pre-Petition Term Documents, the Revolving Loan Documents, the Term Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the Revolving Loan Collateral or Term Loan Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

5.6    *Binding Effect.*

5.6.1    The provisions of this Final Financing Order and the Revolving Loan Documents, the Term Loan Documents, the Revolving Loan Obligations, the Term DIP Obligations, the Revolving Loan Superpriority Claim, the Term Loan Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of each Agent and each Secured Party provided or acknowledged in this Final Financing Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Financing Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive

01:14694868.6

entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

5.6.2   Any order dismissing one or more of the Cases under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Revolving Loan Superpriority Claim and Revolving Agent's and Revolving Secured Parties' liens on and security interests in the Revolving Loan Collateral shall continue in full force and effect notwithstanding such dismissal until the Revolving Loan Obligations are indefeasibly paid and satisfied in full, (b) the Term Loan Superpriority Claim and DIP Note Agent's and DIP Note Purchasers' liens on and security interests in the Term Loan Collateral shall continue in full force and effect notwithstanding such dismissal until the Term DIP Obligations are indefeasibly paid and satisfied in full, and (c) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Revolving Loan Superpriority Claim, the Term Loan Superpriority Claim and liens in the Revolving Loan Collateral and the Term Loan Collateral.

5.6.3   In the event this Court modifies any of the provisions of this Final Financing Order, the Revolving Loan Documents or the Term Loan Documents following a Final Hearing, (a) such modifications shall not affect the rights or priorities of Revolving Agent and Revolving Secured Parties pursuant to this Final Financing Order with respect to the Revolving Loan Collateral or any portion of the Revolving Loan Obligations which arises or is incurred or is advanced prior to such modifications, and (b) such modifications shall not affect the rights or priorities of DIP Note Agent and DIP Note Purchasers pursuant to this Final Financing Order with respect to the Term Loan Collateral or any portion of the Term DIP Obligations which arises or is incurred or is advanced prior to such modifications, and (c) this

01:14694868.6

Final Financing Order shall remain in full force and effect except as specifically amended or modified by future order of the Court.

   5.6.4 This Final Financing Order shall be binding upon Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor. This Final Financing Order shall also inure to the benefit of each Agent, each Secured Party, Debtors and their respective successors and assigns.

   5.7  *Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment.*

   5.7.1 All post-petition advances and other financial accommodations under the Credit Agreement and the other Revolving Loan Documents are made in reliance on the Interim Order and this Final Financing and it shall be an Event of Default under the terms of this Final Financing Order if at any time an Order is entered in the Cases, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order which (a) authorizes the use of Cash Collateral of Debtors in which Revolving Agent or Revolving Lenders have an interest, or the sale, lease, or other disposition of property of any Debtor's Estate in which Revolving Agent or Revolving Secured Parties have a lien or security interest, except as expressly permitted hereunder or in the Revolving Loan Documents, or (b) except to the extent permitted pursuant to the terms and conditions of the Intercreditor Agreement, authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Revolving Agent or Revolving Secured Parties hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that Revolving Agent and Revolving Secured Parties been granted herein; unless, in each instance (i) Revolving Agent

01:14694868.6

shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Revolving Agent or any Revolving Secured Party, or (ii) such other order requires that all Revolving Loan Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Credit Agreement and the other Revolving Loan Documents, including, without limitation, all debts and obligations of Debtors to Revolving Agent and Revolving Secured Parties which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Revolving Agent. The security interests and liens granted to or for the benefit of Revolving Agent and Revolving Secured Parties hereunder and the rights of Revolving Agent and Revolving Secured Parties pursuant to the Interim Order and this Final Financing Order and the Revolving Loan Documents with respect to the Revolving Loan Obligations and the Revolving Loan Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors and, if Revolving Agent shall expressly consent in writing that the Revolving Loan Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

5.7.2 All post-petition Term DIP Loans and other financial accommodations under the DIP Note Agreement and the other Term Loan Documents are made in reliance on the Interim Order and this Final Financing Order, and it shall be an Event of Default if at any time in the Cases, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, the Court enters any order which (a) authorizes the use of Cash Collateral of Debtors in which the DIP Note Agent or DIP Note Purchasers have an interest, or the sale, lease, or other disposition of property of any Debtor's estate in which the DIP Note Agent or DIP Note Purchasers have a lien or security interest, except as expressly permitted hereunder or in the Term Loan Documents, or (b) except to the extent permitted pursuant to the terms and conditions

of the Intercreditor Agreement, authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Note Agent or DIP Note Purchasers hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Note Agent and DIP Note Purchasers herein; unless, in each instance (i) DIP Note Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Note Agent or any DIP Note Purchasers, or (ii) such other order requires that all Term DIP Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Note Agreement and the other Term Loan Documents, including, without limitation, all debts and obligations of Debtors to DIP Note Agent and DIP Note Purchasers which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to DIP Note Agent. The security interests and liens granted to or for the benefit of the DIP Note Agent and DIP Purchasers hereunder and the rights of DIP Note Agent and DIP Purchasers pursuant to the Interim Order and this Final Financing Order and the Term Loan Documents with respect to the Term DIP Obligations and the Term Loan Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors and, if DIP Note Agent shall expressly consent in writing that the Term DIP Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

    5.8    *No Owner/Operator Liability.*

        5.8.1   In determining to make any Revolving Loan or Term DIP Loan under any of the Revolving Loan Documents or Term Loan Documents, the Interim Order or this Final Financing Order, or in exercising any rights or remedies as and when permitted pursuant to

01:14694868.6

the Revolving Loan Documents, the Interim Order or this Final Financing Order, the DIP Agents and DIP Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

      5.9    *Marshalling*. Subject to the terms of the Intercreditor Agreement, in no event shall any Agent or any Secured Party be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Revolving Loan Collateral or the Term Loan Collateral, as applicable. Each DIP Agent and each DIP Secured Party shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to either Agent or any Secured Party with respect to proceeds, products, offspring or profits of any of the Revolving Loan Collateral or Term Loan Collateral, as applicable.

      5.10    *Right of Setoff.*

      5.10.1  To the extent any funds were on deposit with Revolving Agent or any Revolving Lender as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with Revolving Agent or any Revolving Lender immediately prior to Petition Date (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "***Deposited Funds***") are subject to rights of setoff. By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of Revolving Agent or the applicable Revolving Lender pursuant to Sections 506(a) and 553 of the Bankruptcy Code.

5.10.1  To the extent any funds were on deposit with the Pre-Petition Term Loan Agents or any Pre-Petition Term Loan Secured Party as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with the Pre-Petition Term Loan Agents or any Pre-Petition Term Loan Secured Party upon the Petition Date (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such Deposited Funds are subject to rights of setoff. By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of the DIP Note Agent or the applicable DIP Note Purchaser pursuant to Sections 506(a) and 553 of the Bankruptcy Code.

5.11    *Right to Credit Bid.*

5.11.1  Subject to the terms and conditions of the Intercreditor Agreement, the Revolving Agent, on behalf of itself and the Revolving Secured Parties, shall have the right to "credit bid" the amount of its and their claims arising under the terms of the Revolving Documents, during any sale of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

5.11.2  Subject to the terms and conditions of the Intercreditor Agreement and that certain Letter Agreement dated December 17, 2013 among the Stalking Horse Purchaser, Black Diamond Capital Management, L.L.C and Solus Alternative Asset Management LP, the (a) DIP Note Agent, on behalf of itself and the DIP Note Purchasers and (b) the Pre-Petition Term Loan Agents, on behalf of itself and the Pre-Petition Term Loan Secured Parties, shall have the right to "credit bid" the amount of its and their claims arising under the terms of the Term Loan Documents and the Pre-Petition Term Documents, as applicable, during

any sale of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

        5.12    *UK Creditor Reserve.* As set forth on the record of the Final Hearing, the Revolving Agent shall fund a reserve in the amount of $1.526 million in a separate, segregated account, which funds may be used by the Debtors (including Constar UK) in accordance with the terms of the Credit Agreement to pay or to meet the claims of certain "prescribed part" and preferred creditors of Constar UK, in the event that Constar is placed into administration or liquidation as required by the Insolvency Act of 2006 or otherwise under the laws of England.

        5.13    *Term; Termination.*

        5.13.1  Notwithstanding any provision of this Final Financing Order to the contrary, the term of the financing arrangements among Debtors, Revolving Agent and Revolving Lenders authorized by this Final Financing Order may be terminated pursuant to the terms of the Credit Agreement.

        5.13.2  Notwithstanding any provision of this Final Financing Order to the contrary, the term of the financing arrangements among Debtors, DIP Note Agent and DIP Note Purchasers authorized by this Final Financing Order may be terminated pursuant to the terms of the DIP Note Agreement.

        5.14    *Limited Effect.* In the event of a conflict between the terms and provisions of any of the Revolving Loan Documents, the Term Loan Documents and this Final Financing Order, the terms and provisions of this Final Financing Order shall govern, interpreted as most consistent with the terms and provisions of the applicable Loan Documents. In the event of any conflict between the terms of this Final Financing Order and the Intercreditor Agreement, as

between the Revolving Agent and the Revolving Secured Parties on the one hand, and the DIP Note Agent, the DIP Note Purchasers, the Pre-Petition Term Loan Agents and the Pre-Petition Term Loan Secured Parties, on the other hand, the terms and provisions of this Final Financing Order shall control, it being understood, however, that in the absence of such conflict, the Intercreditor Agreement (including, without limitation, the modification to the respective priorities with respect to the allocation of the proceeds received from the sale of the property known as "Old Bay Lane") shall continue to apply according to its terms.

      5.15    *Objections Overruled.*  All objections to the entry of this Final Financing Order, are, to the extent not withdrawn or resolved, hereby overruled.

      5.16    *Priority of Break-Up Fee in Favor of U.S. Stalking Horse Bidder.*  In the event the Stalking Horse Bidder (as defined in the Bidding Procedures Order [Docket No. 187]) is entitled to receive the Break-Up Fee and/or Expense Reimbursement (as defined in such order), with respect to the Break-Up Fee and Expense Reimbursement only, the liens and superpriority claims granted pursuant to this Final Financing Order shall be subject to the terms and conditions set forth in section 17 of the Bidding Procedures Order with respect to the Break-Up Fee and Expense Reimbursement.

Dated: January 16, 2014
      Wilmington, Delaware

 

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

01:14694868.6